(Nos. 71844, 71848

RONALD DIXON, Appellee, v. CHICAGO AND NORTH
  WESTERN TRANSPORTATION COMPANY *et al.*,
  Appellants.

*Opinion filed October 1, 1992.*

110

John P. Milroy and George H. Brant, of Chicago, for appellant Chicago and North Western Transportation Co.

Michael Resis, of Querrey & Harrow, Ltd., of Chicago, for appellant Kevin Hauser.

Thomas F. Lucas and Jeanne M. Lamar, of Peterson & Ross, of Chicago, for appellants American Motors Corp. *et al.*

No appearance for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

On May 22, 1985, the plaintiff, Ronald Dixon, instituted a lawsuit seeking damages for injuries he sustained in a May 16, 1985, motor vehicle accident. After undergoing several amendments, Dixon's complaint ultimately named Kevin Hauser, Chicago and North West-

ern Transportation Company (North Western), and American Motors Corporation, American Motors Sales Corporation, and Jeep Corporation (the Jeep defendants), as defendants. North Western filed a counterclaim seeking contribution from the Jeep defendants. Following a settlement between the plaintiff, Dixon, and the Jeep defendants, the trial court dismissed Dixon's complaint against the Jeep defendants and North Western's counterclaim. North Western thereafter filed a second counterclaim against the Jeep defendants based on implied indemnity. Hauser also filed a counterclaim seeking implied indemnity from American Motor Sales Corporation and Jeep Corporation. The trial court subsequently dismissed both North Western's and Hauser's indemnity counterclaims. Hauser appealed the dismissal of his indemnity counterclaim. North Western appealed the dismissal of both its contribution counterclaim and its indemnity counterclaim. The appellate court affirmed the dismissal of all the counterclaims. (209 Ill. App. 3d 1104 (unpublished order under Supreme Court Rule 23).) We allowed North Western's and Hauser's petitions for leave to appeal (134 Ill. 2d R. 315) and consolidated the causes for consideration by this court.

On and before May 16, 1985, North Western employed Ronald Dixon as a brakeman and Kevin Hauser as a conductor. On that date, both Dixon and Hauser spent the morning working for North Western in Crystal Lake, Illinois, and then proceeded to the North Western Proviso yard. The two men traveled from Crystal Lake to the Proviso yard in a 1980 American Motors Jeep CJ-7 owned by Hauser's wife. Hauser drove the jeep and Dixon rode in the front passenger seat of the vehicle. While en route to the Proviso yard, the jeep went out of control on a highway exit ramp and flipped over. Hauser was essentially unharmed, but Dixon sustained severe injuries which left him blind and facially disfigured.

On May 22, 1985, Dixon filed a complaint against North Western seeking recovery for his injuries under the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1988)). The complaint charged that North Western, acting through its "agent, servant and employee" Hauser, violated the FELA by: (1) failing to provide Dixon with a safe place to work; (2) failing to maintain a proper lookout; (3) failing to operate the jeep at a safe speed; and (4) failing to reduce speed prior to entering the exit ramp.

Subsequent amendments to Dixon's complaint added Hauser and the Jeep defendants as defendants. Dixon's complaint against Hauser asserted that Hauser was negligent in his operation of the jeep. Dixon's charges against the Jeep defendants sounded in strict liability and alleged that they designed, manufactured, distributed and sold the jeep in a defective and unreasonably dangerous condition.

On January 28, 1988, North Western filed a counterclaim against the Jeep defendants seeking contribution pursuant to the Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*). North Western's counterclaim charged the Jeep defendants with liability for Dixon's injuries under strict products liability and negligence theories.

Sometime prior to March 1989, a settlement agreement was reached between Dixon and the Jeep defendants. (The record is unclear as to whether American Motors Sales Corporation was expressly named as a party to this settlement. However, the parties, as well as the trial court and the appellate court, have proceeded as if American Motors Sales Corporation's liability was extinguished by this settlement. We shall therefore proceed under this assumption as well.) Pursuant to that settlement, the Jeep defendants agreed to pay Dixon $1.5 million in satisfaction of Dixon's claim against them. On

March 14, 1989, the Jeep defendants filed a motion for approval of the settlement and a finding that it was made "in good faith." Under the Contribution Act, if a settlement is found to have been made in good faith, the settling party is discharged from liability for contribution to any other tortfeasors. (Ill. Rev. Stat. 1987, ch. 70, pars. 302(c), (d).) North Western filed a response to the motion in which it asserted that the settlement was not made in good faith. North Western's response was accompanied by numerous exhibits which purported to establish that the Jeep defendants were primarily liable for the plaintiff's injuries. North Western further requested that the trial court conduct an evidentiary hearing on the good-faith issue.

The trial judge denied North Western's request for an evidentiary hearing, and instead elected to hear arguments of counsel on the motion. At the culmination of the arguments, the trial judge orally approved the settlement. On August 17 and 18, 1989, written orders were entered by the trial judge approving the settlement and dismissing North Western's contribution counterclaim because of the settlement. North Western timely filed a notice of appeal from that dismissal.

Thereafter, North Western and Hauser both filed counterclaims for implied indemnity. North Western sought indemnification from the Jeep defendants and Hauser sought indemnification from American Motors Sales Corporation and Jeep Corporation. Both counterclaims sought to hold the Jeep defendants liable based upon theories of strict liability and breach of implied warranties.

The Jeep defendants filed a motion to dismiss the indemnity counterclaims. After hearing arguments on the motion, the trial court granted the motion and dismissed the indemnity counterclaims. Both North Western and Hauser filed timely notices of appeal. As noted, the ap-

pellate court, in a consolidated ruling, affirmed the dismissal of all the counterclaims, and North Western and Hauser appealed to this court.

The parties to this appeal have filed supplemental briefs which reveal that, subsequent to the filing of their petitions for leave to appeal in this court, both North Western and Hauser settled with Dixon. The parties report that North Western settled for $1.2 million and that Hauser settled for $100,000.

## CONTRIBUTION

North Western challenges the dismissal of its counterclaim for contribution. As noted, the trial court dismissed that counterclaim after finding that the settlement between the Jeep defendants and Dixon was made in good faith. North Western's allegations of error are aimed at the procedures employed by the trial court in making its good-faith determination.

North Western first contends that the trial court erred in refusing to conduct an evidentiary hearing on the good faith of the Jeep settlement. In addition, North Western asserts that existing Illinois law fails to give sufficient guidelines to trial courts regarding what criteria they should consider in determining the good faith of a settlement. North Western argues that this lack of guidance resulted in the trial court's failing in this case to give proper consideration to all the relevant factors surrounding the settlement. North Western asks that this court hand down more specific criteria for determining when a settlement is made in good faith and suggests that we adopt the test for good faith designed by the California Supreme Court in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985), 38 Cal. 3d 488, 698 P.2d 159, 213 Cal. Rptr. 256.

The Jeep defendants respond that North Western's settlement with Dixon has rendered the propriety of the

dismissal of North Western's contribution claim a moot question. We agree. As noted, subsequent to the filing of its petition for leave to appeal in this court, North Western settled with Dixon. That settlement has the effect of barring North Western from seeking contribution from the Jeep defendants.

Section 2(e) of the Contribution Act provides:

> "A tortfeasor who settles with a claimant pursuant to paragraph (c) [*i.e.*, in good faith] is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." (Ill. Rev. Stat. 1987, ch. 70, par. 302(e).)

North Western settled with Dixon. The Jeep defendants were not parties to that settlement agreement. Under the plain language of section 2(e) then, North Western is not entitled to seek contribution from the Jeep defendants. The Jeep defendants' liability was *not* extinguished *by the settlement* entered into by North Western and the plaintiff. A party that settles may seek contribution only from parties whose liability was extinguished by that same settlement. See *Pearson Brothers Co. v. Allen* (1985), 131 Ill. App. 3d 699, 701-02.

An issue is moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief. (*Wheatley v. Board of Education of Township High School District 205* (1984), 99 Ill. 2d 481, 484-85; see also *Novak v. Rathnam* (1985), 106 Ill. 2d 478, 482.) "This court will not review cases merely to establish a precedent or guide future litigation." (*Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 235.) The fact that a case is pending on appeal when the events which render an issue moot occur does not alter this conclusion. (*Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 250.) A reviewing court can take judicial notice of events or facts which, while not appearing in the

record, disclose that an issue has been mooted. *Bluthardt*, 74 Ill. 2d at 250.

It is clear that North Western's settlement with Dixon has made the dismissal of its contribution counterclaim a moot issue. Under section 2(e) of the Contribution Act, North Western is *barred* from seeking contribution from the Jeep defendants. The relief North Western requests from this court is the reinstatement of its claim for contribution. Were we to grant such relief, upon remand the contribution claim would simply be dismissed pursuant to section 2(e). Thus, North Western's settlement has made it impossible for this court to grant it effectual relief.

North Western essentially provides no argument as to why section 2(e) would not apply here, except to say that applying it ignores the "dilemma" North Western was put in by the dismissal of its contribution counterclaim. We assume that North Western is arguing that it would be unfair to apply section 2(e) to it because, as the sole "deep-pocket" defendant left to go to trial, it was "forced" to settle with Dixon. This argument has no substance, however, because North Western admits that it had a settlement offer of $1.15 million on the table since fall of 1988, well *before* the Jeep defendants announced their settlement with Dixon. (Also in the fall of 1988, the Jeep defendants had a settlement offer of $1 million on the table.) As noted, North Western ultimately settled for $1.2 million, a figure very close to its previous offer. Thus, it cannot rightly be said that North Western was "forced" to settle by the Jeep settlement.

It is true that exceptions to the mootness doctrine have been drawn in certain, rare cases. An otherwise moot issue will occasionally be considered where "the magnitude or immediacy of the interests involved warrant[s] action by the court" or where the issue is " 'likely to recur but unlikely to last long enough to al-

low appellate review to take place because of the intrinsically short-lived nature of the controversies'" in which it could arise. (*First National Bank v. Kusper* (1983), 98 Ill. 2d 226, 235, quoting *People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273, 277-78.) This case does not present either of these situations. Accordingly, we hold that North Western's settlement with the plaintiff has rendered the dismissal of North Western's contribution counterclaim a moot issue.

## IMPLIED INDEMNITY

North Western also challenges the dismissal of its counterclaim for implied indemnity from the Jeep defendants. Hauser, too, contends that his implied indemnity counterclaim was improperly dismissed. We hold that both North Western's and Hauser's implied indemnity claims were properly dismissed.

The right of indemnity and the right of contribution are separate and distinct concepts. Contribution contemplates the distribution of liability for a loss among joint tortfeasors according to each tortfeasor's percentage of relative fault. (See *Skinner v. Reed-Prentice Division Package Machine Co.* (1977), 70 Ill. 2d 1.) Indemnity, on the other hand, allows one tortfeasor to shift the *entire* loss to another tortfeasor. (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469.) In general terms, indemnity is the obligation resting on one party (the indemnitor) to make good a loss or damage another (the indemnitee) has incurred. (See 41 Am. Jur. 2d *Indemnity* §1, at 687 (1968).) The right to be indemnified by another may be express, as in a contractual provision, or it may be implied. Implied indemnity arises in situations in which a promise to indemnify can be implied from the relationship between the tortfeasors. (*Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 255.) The cause of action finds its roots in principles of restitution;

a contract to indemnify is implied in law based upon the legal obligation of the indemnitee to satisfy liability caused by actions of its indemnitor. *Frazer*, 123 Ill. 2d at 255.

This court recently addressed the scope of implied indemnity in a defective products case. In *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, the plaintiff was injured when a trailer became detached from a pickup truck and struck the plaintiff's automobile. Munsterman, a rental company, owned the trailer in question and had rented it to the driver of the pickup truck. The plaintiff sued Munsterman, charging that it negligently provided a defective hitch for the trailer, which defect caused the trailer to disengage. Munsterman filed a third-party action seeking, *inter alia*, implied indemnity from the manufacturers of the trailer and the hitch and the distributors that supplied the products to Munsterman. Following a trial in the original action, the jury found Munsterman to be guilty of the charged negligence. The trial court thereafter dismissed Munsterman's third-party claims for implied indemnity from the manufacturers and distributors. The appellate court affirmed the dismissals and Munsterman appealed to this court.

After engaging in a thorough analysis of the history and development of the doctrine of implied indemnity, this court concluded that the scope of implied indemnity in a defective products case should be limited to those situations in which the indemnitee was not negligent or otherwise at fault in causing the loss. Where the party seeking indemnity was not at fault, it can rightfully seek to shift its entire liability to the truly responsible party. However, if the party seeking indemnity is found to have been at fault in causing the injury, fairness dictates that it not be allowed to shift the entire loss to other parties. *Frazer*, 123 Ill. 2d at 262.

Accordingly, the *Frazer* court concluded that, because Munsterman was found to have been negligent, it could not seek implied indemnity from the manufacturers and distributors of the products. The court determined that "[i]t would be unfair for [Munsterman] to be able, through an action of implied indemnity, to shift the entire loss to other defendants when its own negligence contributed to cause the plaintiff's injury." *Frazer*, 123 Ill. 2d at 262.

The scope of the *Frazer* holding was further elucidated in *Thatcher v. Commonwealth Edison Co.* (1988), 123 Ill. 2d 275, an opinion handed down on the same day as *Frazer*. In *Thatcher*, the plaintiff was injured while performing work at an Edison power plant using a high-pressure hose provided by Edison. The plaintiff sued Edison, charging it with negligence and Structural Work Act violations. Edison filed a third-party action against the manufacturer of the hose seeking, *inter alia*, implied indemnity. Before the case went to trial, Edison settled with the plaintiff. The trial court thereafter dismissed Edison's claim for implied indemnity.

This court affirmed the dismissal of Edison's indemnity claim. (*Thatcher*, 123 Ill. 2d at 279.) The *Thatcher* court held that even though a judgment of negligence was never obtained against Edison, the third-party complaint failed to state a cause of action for implied indemnity because the *Frazer* requirement of a faultless indemnitee was not met. The fact that no judgment of fault had been entered against Edison did not mandate a contrary result. Edison had settled under a complaint that charged it with fault and this court held that it could reasonably be inferred that Edison settled to avoid a finding that it was at fault. *Thatcher*, 123 Ill. 2d at 279.

Thus, under this court's pronouncements in *Frazer* and *Thatcher*, implied indemnity in a defective products

case remains available only where the party seeking it was not "negligent or otherwise at fault in causing the loss." (*Thatcher*, 123 Ill. 2d at 278.) We conclude that the claims for indemnity made by North Western and Hauser do not satisfy this requirement.

Hauser was charged with liability for Dixon's injuries on the theory that Hauser was negligent in his operation of the jeep. Accordingly, for Hauser to be found liable to Dixon, a finding of negligence on Hauser's part would have to be made. Hauser's indemnity claim seeks indemnification from American Motors Sales Corporation and Jeep Corporation "for any and all amounts for which he may be held liable to [Dixon]." Because Hauser's liability to Dixon could be premised only on Hauser's *negligence*, Hauser is barred under *Frazer* from seeking indemnification for that liability.

North Western was charged with responsibility for Dixon's injuries under two theories: (1) that it was chargeable for Hauser's negligence under the doctrine of *respondeat superior*; and (2) that it was liable under the FELA. For North Western to be liable to Dixon under the FELA, a finding that North Western was negligent would have to be made. (See 45 U.S.C. §51 (1988); see also *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 111 (FELA imposes liability only for negligent acts).) Similarly, for North Western to be liable to Dixon under the doctrine of *respondeat superior*, a finding would have to be made that Hauser was negligent, which negligence would then be charged to North Western as Hauser's employer. North Western's indemnity counterclaim, like Hauser's, requests indemnification from the Jeep defendants "for any and all amounts for which it may be found liable to [Dixon]." Under either the FELA or the doctrine of *respondeat superior*, North Western's liability to Dixon would be premised on North Western's *negligence*. Thus,

North Western, like Hauser, is barred under *Frazer* from seeking implied indemnity from the Jeep defendants.

The fact that North Western and Hauser settled before a finding of liability was obtained against them is irrelevant under *Thatcher*. As in *Thatcher*, North Western and Hauser settled under a complaint that charged them with *fault* in causing the plaintiff's injuries. Their potential liability to Dixon was premised solely on their fault and they therefore cannot seek to shift that liability to another party. See *Thatcher*, 123 Ill. 2d at 279.

North Western and Hauser nevertheless urge us to uphold their claims for implied indemnity from the Jeep defendants. As support for their argument, North Western and Hauser rely almost exclusively on this court's holding in *Suvada, v. White Motor Co.* (1965), 32 Ill. 2d 612. In *Suvada*, this court adopted the concept of strict liability for manufacturers of defective products. The *Suvada* court further allowed the owners of a defective product, though themselves at fault, to seek indemnity from the manufacturer of the product. In *Suvada*, the brake system of a tractor unit owned by the plaintiffs failed and the tractor collided with a bus. The plaintiffs sued the manufacturers of the tractor unit and of the brake system, seeking damages for the injury to the tractor and indemnification for amounts they paid in settlement to injured bus passengers. The trial court dismissed the plaintiffs' indemnity claims.

This court held that the plaintiffs' indemnity claims were improperly dismissed by the trial court. In so holding, the *Suvada* court acknowledged that the plaintiffs' liability to the bus passengers would be based upon the plaintiffs' own negligence. The court, however, stated that indemnity "is not *** limited to those who are personally free from fault," and held that this circumstance

would not bar the plaintiffs from seeking indemnity from the manufacturers. *Suvada*, 32 Ill. 2d at 624.

North Western and Hauser rely on this holding by the *Suvada* court as support for their contention that their indemnity claims should be upheld. However, we find that this portion of the *Suvada* holding can no longer be considered viable. In *Frazer*, this court expressly held that an action for implied indemnity cannot be maintained in a defective products case where the one seeking indemnity is negligent or otherwise at fault. (*Frazer*, 123 Ill. 2d at 262; see also *Thatcher*, 123 Ill. 2d at 278.) The *Suvada* court's pronouncement that indemnity *is* available to a party that is itself negligent is clearly contradicted by the *Frazer* holding. *Suvada*'s holding on the indemnity issue was thus impliedly overruled by *Frazer*. North Western's and Hauser's reliance on that holding is, therefore, unavailing.

North Western and Hauser argue, however, that even aside from *Suvada*'s holding on the indemnity issue, *Suvada*'s central holding recognizing strict products liability supports their argument. North Western and Hauser contend that the public policy considerations which motivated the adoption of strict products liability require that their indemnity claims against the Jeep defendants be allowed.

North Western's and Hauser's argument is premised upon their assertion that, unlike the indemnitees in *Frazer* and *Thatcher*, they are "users-consumers" of the defective product. (North Western's status as a "user-consumer" of the jeep is, of course, based upon the fact that its liability to Dixon, under *respondeat superior*, is vicarious through Hauser.) Strict products liability, North Western and Hauser urge, was adopted in order to protect consumers against injuries from defective products and to impose the loss resulting from a defective product on the product's manufacturer. North Western and

Hauser contend that these policy considerations mandate that a "user-consumer" of a defective product, even though himself negligent, be allowed a right of indemnity against the manufacturer. In essence, North Western and Hauser ask us to carve an exception to the rule of *Frazer* and *Thatcher* based on what they term the "special relationship" between the consumer of a product and the manufacturer.

While we agree that strict products liability was indeed premised, at least in part, on the policy considerations advanced by North Western and Hauser, we are not persuaded that these considerations mandate the conclusion which they urge. We find nothing in the policy basis underlying strict products liability to require that the manufacturer bear the *entire* loss when the negligence of another tortfeasor has contributed to the plaintiff's injuries. To the contrary, this court has repeatedly recognized that strict products liability was never intended to make the manufacturer an absolute insurer of its product. See *Frazer*, 123 Ill. 2d at 264; *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111.

Moreover, while protection of the "consumer" *is* a paramount goal of strict products liability, it is clear that the "consumer" contemplated is the injured plaintiff-consumer. In this case, Hauser, while certainly a "consumer" of the jeep, is *not* the injured plaintiff whose recovery strict products liability was intended to protect. Thus, the mere fact that Hauser (and, derivatively, North Western) was the "user-consumer" of the jeep does not mandate that he should be allowed to escape responsibility for his own negligence by shifting the entire liability to the Jeep defendants. We conclude that requiring an apportionment of damages between a strictly liable manufacturer and a negligent "user-con-

sumer" does not subvert the policy considerations underlying strict products liability.

North Western's and Hauser's strenuous arguments to the contrary notwithstanding, this case involves nothing more than the apportionment of a loss between three *joint tortfeasors*. The fact that two of those tortfeasors may be considered "users-consumers" of the product is immaterial in this analysis. Hauser and North Western, as joint tortfeasors with the Jeep defendants, are amply protected by the right to seek contribution from the Jeep defendants for their proportional share of liability. (This is not changed by the fact that North Western and Hauser each voluntarily chose to abandon their right to contribution when they settled with Dixon.) To allow North Western and Hauser to shift the entire liability to the Jeep defendants would violate both this court's precedents and this State's governing principles of equity and fairness. Accordingly, we hold that North Western's and Hauser's counterclaims for implied indemnity were properly dismissed by the trial court.

For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the dismissal of North Western's contribution counterclaim and the dismissal of North Western's and Hauser's indemnity counterclaims.

*Affirmed.*