ALFREDO GARCIA, Adm'r of the Estate of Victoria Garcia, Deceased, Plaintiff-Appellee, v. EDGEWATER HOSPITAL, Defendant-Appellant and Third-Party Plaintiff-Appellant (Shiley, Inc., Third-Party Defendant-Appellee).

First District (5th Division) No. 1—90—3663

Opinion filed March 26, 1993.—Rehearing denied May 19, 1993.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson, Hugh C. Griffin, David C. Hall, and Sandra K. Macauley, of counsel), for appellant.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and Roland P. Ernst, of counsel), for appellee Alfredo Garcia.

Mayer, Brown & Platt, of Chicago (Robert F. Finke, Michele Odorizzi, Priscilla P. Weaver, and Kurt D. Williams, of counsel), for appellee Shiley, Inc.

JUSTICE COUSINS delivered the opinion of the court:

Defendant, Edgewater Hospital (Edgewater), appeals an $845,000 jury verdict rendered against it in a wrongful death action brought by plaintiff, Alfredo Garcia (plaintiff), as administrator of the estate of his deceased wife, Victoria Garcia (Mrs. Garcia).

While at Edgewater, Mrs. Garcia died after surgery performed by Dr. Jafar Shah-Mirany (Dr. Shah-Mirany). At trial, plaintiff's sole theory against Edgewater was that Edgewater was liable for breach of implied warranty of merchantability under the Illinois Uniform Commercial Code (Commercial Code or Code) (Ill. Rev. Stat. 1983, ch. 26, par. 1—101 *et seq.*). The basis for plaintiff's implied warranty claim was a defective prosthetic heart valve, manufactured by Shiley, Inc., which lengthened the time necessary to perform Mrs. Garcia's heart surgery because the defective valve had to be replaced by a second valve. As a result, Mrs. Garcia died from blood loss when, due to their religious beliefs, the Garcias refused to permit a blood transfusion.

The jury returned a verdict in plaintiff's favor in the amount of $845,000 which was later reduced to $645,000 to reflect a prior $200,000 settlement between plaintiff and the manufacturer, third-

party defendant Shiley, Inc. The jury found against plaintiff and in favor of codefendant Dr. Shah-Mirany, on allegations of medical malpractice for unnecessary and negligent performance of the surgical procedure.

Edgewater's third-party complaint against Shiley seeking indemnity based on breach of warranty allegations was dismissed prior to trial.

The issues presented for review are: (1) whether the trial court erred in ruling that Edgewater's liability could be premised on breach of an implied warranty of merchantability under the Illinois Commercial Code, (2) whether the trial court erred in ruling that section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—621) did not apply to actions premised on breach of implied warranty of merchantability, (3) whether plaintiff's claim was barred by the "Refusal To Permit Blood Transfusion" signed by Mrs. Garcia and the "Special Consent And Release" signed by Mr. and Mrs. Garcia, and (4) whether the trial court erred in ruling that the hospital's third-party complaint for indemnity against the manufacturer was barred by the manufacturer's previous settlement with plaintiff pursuant to the Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*).

Reversed and remanded with directions.

BACKGROUND

Mrs. Garcia had a history of heart problems. On July 19, 1982, Mrs. Garcia was admitted to Edgewater Hospital for mitral valve replacement surgery which was to occur on July 21, 1982. The mitral valve connects the heart's atrial and ventricular chambers and allows blood to properly flow between the two chambers, thereby providing normal heart function. During this surgical procedure, the diseased mitral valve would be removed and replaced with an artificial valve prosthesis so that it would perform the same heart function.

Because Mr. and Mrs. Garcia were of the Jehovah's Witness religion, Mrs. Garcia agreed to have surgery subject to the condition that there would be no transfusion of blood or blood derivatives, no matter what unforeseen or untoward event occurred. Consequently, on July 20, 1982, the day before the mitral valve replacement surgery, Mrs. Garcia executed two releases.

The "Refusal To Permit Blood Transfusion" signed by Mrs. Garcia provided, in pertinent part, that Mrs. Garcia released

"the attending physician, his assistants, the hospital and its personnel from any responsibility whatever for any untoward

results due to my refusal to permit the use of blood or its derivatives."

The "Special Consent And Release" which was signed by Mr. and Mrs. Garcia read, in pertinent part, as follows:

"[U]nforeseen conditions may be revealed that would medically necessitate a transfusion of human blood or blood derivatives ***. In the event of my death as a result of not administering blood, we hereby absolve Dr. J. Shah-Mirany, his assistants, his designees, and Edgewater Hospital of Chicago and its agents from liability."

Dr. Shah-Mirany performed the surgery on July 21, 1982. He placed Mrs. Garcia on a cardiopulmonary bypass machine at 9:36 a.m., opened the heart, and removed the diseased valve. Dr. Shah-Mirany then attached a Shiley prosthetic valve to tissues in Mrs. Garcia's heart, closed the heart, and took steps to close the chest incision.

Mrs. Garcia was then put on partial bypass, her heart was restarted and rewarmed. However, her heart was not functioning properly and Dr. Shah-Mirany took steps to understand and correct the nature of the malfunction. Dr. Shah-Mirany reopened Mrs. Garcia's heart and found that part of the Shiley valve was floating in the heart's chamber. Dr. Shah-Mirany removed the defective Shiley valve and replaced it with another Shiley valve. Mrs. Garcia was still on the cardiopulmonary bypass machine. Dr. Shah-Mirany closed Mrs. Garcia's heart and chest. Surgery ended at 3:10 p.m., and Mrs. Garcia was transferred to the recovery room with her heart functioning satisfactorily.

Mrs. Garcia remained on the cardiopulmonary bypass machine for 3 hours and 49 minutes, which was longer than originally anticipated. Because of the extended time on the bypass machine, Mrs. Garcia developed coagulopathy, a clotting disorder which occurs when the blood will not clot. Mrs. Garcia lost all of her blood, became anemic, and died several hours after her surgery.

Edgewater contends that because Mrs. Garcia was on the cardiopulmonary bypass machine longer than anticipated, she lost more platelets than normal. Dr. Shah-Mirany stated that he repeatedly asked Mr. Garcia to consent to a blood transfusion, but Mr. Garcia repeatedly refused. Dr. Shah-Mirany contends that if Mrs. Garcia had been given blood, she probably would have recovered.

Plaintiff contends that because Mrs. Garcia was on the cardiopulmonary bypass machine too long, the coagulopathy which existed in Mrs. Garcia was irreversible, and a transfusion of platelets would not have reversed the coagulopathy or saved Mrs. Garcia's life.

However, one of plaintiff's witnesses, on cross-examination, admitted that the only chance of stopping coagulopathy is to give blood or blood products. This witness also testified that if Mrs. Garcia had received blood or blood products early enough during the bypass, she would have had a chance of surviving.

Plaintiff originally brought an action against other defendants, including the manufacturer of the defective heart valve, Shiley, Inc., Dr. Shah-Mirany and the anesthesiologist alleging claims of strict liability, medical malpractice and negligence. The anesthesiologist was dismissed from the action and Shiley ultimately settled plaintiff's claim against it for $200,000.

Plaintiff amended his complaint to add an implied warranty theory to his negligence theory against Edgewater. Edgewater then filed a motion to dismiss and/or for summary judgment asserting that section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—621) mandated Edgewater's dismissal from the implied warranty cause of action. Edgewater also filed a third-party complaint against Shiley, Inc., seeking implied warranty indemnity in the event that plaintiff prevailed on his implied warranty theory against Edgewater.

Shiley moved to dismiss the third-party complaint on the grounds that the Contribution Act protected it from indemnity because plaintiff's seventh amended complaint still included allegations of negligence against Edgewater.

The trial court found that Shiley's settlement barred Edgewater's indemnity claim pursuant to the Contribution Act and dismissed Edgewater's third-party complaint.

Plaintiff subsequently dismissed the negligence claims against Edgewater and proceeded to trial solely on the theory that Edgewater's provision of the Shiley mitral valve was a "sale" under the Illinois Commercial Code and that Edgewater, as merchant under the Code, breached the implied warranty of merchantability by providing a defective valve. Plaintiff also brought a medical malpractice/negligence action against Dr. Shah-Mirany.

The jury returned a verdict against Edgewater in the amount of $845,000 which the trial court reduced to $645,000 to reflect a setoff for the $200,000 settlement with Shiley. The jury returned a verdict in favor of Dr. Shah-Mirany on the medical malpractice/negligence claim. Edgewater filed motions for judgment notwithstanding the verdict, a new trial and/or reinstatement of its third-party complaint all of which were denied. This appeal followed.

Opinion

I

■ Edgewater contends that the trial court erred in ruling that its liability could be premised on breach of implied warranty of merchantability under the Illinois Commercial Code. We disagree.

Section 2—314(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 2—314(1)) provides:

"Unless excluded or modified *** a warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller is a merchant with respect to goods of that kind.*" (Emphasis added.)

A merchant is:

"a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction ***." Ill. Rev. Stat. 1983, ch. 26, par. 2—104(1).

Article 2 of the Illinois Commercial Code is limited in its application to "transactions in goods" (Ill. Rev. Stat. 1983, ch. 26, par. 2—102).

Where a hospital, as an ancillary part of its services, supplies whole blood to a patient by way of a transfusion, it has made a sale rather than performed a service and is therefore subject to liability under a theory of strict tort liability, although the providing of blood is not a principal function of the hospital, for a hospital's contract with a patient is divisible as to the medical and administrative acts involved. *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 451, 266 N.E.2d 897.

We note that section 2 of the Blood and Organ Transaction Liability Act (Ill. Rev. Stat. 1983, ch. 111½, par. 5102) has reversed *Cunningham* as to blood and blood derivatives. That statute provides:

"§2. Limitation of liability. *The procuring, furnishing, donating, processing, distributing or using human whole blood, plasma, blood products, blood derivatives and products,* corneas, bones, or organs or other human tissue *for the purpose of* injecting, *transfusing* or transplanting any of them in the human body *is declared for purposes of liability in tort or contract to be the rendition of a service* by every person, firm or corporation participating therein, whether or not any remuneration is paid therefor, *and is declared not to be a sale* of any such items and no warranties of any kind or description nor

strict tort liability shall be applicable thereto, except as provided in Section 3." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 111½, par. 5102.

The legislature has determined that blood should be treated differently from drugs, surgical implements, food and other articles intended for use in the human body. *Hill v. Jackson Park Hospital* (1976), 39 Ill. App. 3d 223, 226, 349 N.E.2d 541.

Therefore, *Cunningham* is still controlling with respect to other sales, *i.e.*, Edgewater's sale of the two mitral valves to Mrs. Garcia.

In support of its argument, the defendant hospital in *Cunningham* cited *Perlmutter v. Beth David Hospital* (1954), 308 N.Y. 100, 123 N.E.2d 792, for the proposition that the transfusion of blood did not constitute a sale pursuant to the sales act in force in New York at that time. (308 N.Y. 100, 123 N.E.2d 792.) The *Perlmutter* rationale was that when a person enters a hospital as a patient, he goes there not to purchase pills, bandages, etc. but to obtain a course of treatment. (308 N.Y. at 104, 123 N.E.2d at 796.) However, the *Cunningham* court, unable to accept the reasoning of *Perlmutter*, stated:

> "To assert that the transfusion of whole blood by a hospital into a patient, for which a charge is made, does not give rise to implied warranties because no 'sale' is involved is in our judgment simply unrealistic." *Cunningham*, 47 Ill. 2d at 450.

The *Cunningham* court continued that it would be a distortion to try to twist what would be at least arguably a sale into the shape of a service. *Cunningham*, 47 Ill. 2d at 450.

Edgewater cites *WICO Corp. v. Willis Industries* (N.D. Ill. 1983), 567 F. Supp. 352, 355, *Bob Neiner Farms, Inc. v. Hendrix* (1986), 141 Ill. App. 3d 499, 501, 490 N.E.2d 257, and *Pitler v. Michael Reese Hospital* (1980), 92 Ill. App. 3d 739, 742, 415 N.E.2d 1255, for the proposition that the predominant purpose test is applied in Illinois to determine whether contracts are for the sale of goods or for services when both are involved, and that, as such, Edgewater should not be considered a merchant of the mitral valves which it supplied to Mrs. Garcia.

Also, in its supplemental brief, Edgewater cites additional authority in support of the predominant purpose test's application to this case. (*Stiffler v. Lutheran Hospital* (7th Cir. 1992), 965 F.2d 137; *Elke v. Zimmer, Inc.* (1992), 231 Ill. App. 3d 597, 596 N.E.2d 661.) However, these two cases are inapposite as neither deals with breach of warranty or any other provision of the Commercial Code. Rather, the holdings in these cases were based on the statute of repose governing actions against hospitals.

Further, Edgewater cites *dicta* from *Stiffler* regarding a hospital's role. Much of the language in *Stiffler* parallels language from the *Perlmutter* case.

The plaintiff, in *Elke*, initially brought a products liability action against Zimmer and Mercy Hospital. Plaintiff's second and third counts contained allegations of breach of express and implied warranties against Zimmer and Mercy Hospital. In that case, the express and implied warranties counts were subsequently dismissed by the circuit court.

In the instant case, the hospital charged Mrs. Garcia for two mitral valves. The holding as propounded by our supreme court in *Cunningham* makes it clear that the supplying of the mitral valves constituted a sale. Therefore, the trial court did not err in ruling that Edgewater's liability could be premised on breach of implied warranty.

## II

■ Edgewater asserts that the trial court erred in ruling that section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—621) (products liability actions) did not apply to actions premised on breach of implied warranty of merchantability. We disagree.

Section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—621) provides:

"(a) In any product liability action based *** on the doctrine of strict liability in tort commenced or maintained against a defendant *** other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage ***.

(b) *Once the plaintiff has filed a complaint against the manufacturer* or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, *the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants ***.*" (Emphasis added.)

The language is inclusive, and the section applies to all strict liability actions. Edgewater contends that the implied breach of warranty action is in reality a strict liability action.

The theories of breach of implied warranty and strict liability are nearly identical. (*Nave v. Rainbo Tire Service, Inc.* (1984), 123 Ill. App. 3d 585, 592, 462 N.E.2d 620.) A breach of implied warranty the-

ory is a form of strict liability without the necessity of proving negligence or fault on the part of the defendant. *Nave*, 123 Ill. App. 3d at 592.

The strict liability theory is essentially the liability of implied warranty divested of the contract doctrines of privity, disclaimer and notice. *Dunham v. Vaughn & Bushnell Manufacturing Co.* (1967), 86 Ill. App. 2d 315, 333, 229 N.E.2d 684, *aff'd* (1969), 42 Ill. 2d 339, 247 N.E.2d 401.

The existence of a defect in a product has been held to be a necessary requirement to prevail under either theory. *State Farm Fire & Casualty Co. v. Miller Electric Co.* (1990), 204 Ill. App. 3d 52, 62, 562 N.E.2d 589.

Courts have held that to recover under a breach of implied warranty of merchantability theory, a plaintiff must establish (1) a sale of goods, (2) that the seller of the goods is a merchant with respect to those goods, and (3) that the goods were not of merchantable quality. *Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, 558, 501 N.E.2d 376.

Also, implied warranty of merchantability is an action in contract. (See Ill. Rev. Stat. 1983, ch. 26, par. 2—314.) Strict liability is a tort action. (Restatement (Second) of Torts §402A, Comment *m* (1965).) Contribution is grounded in tort. *Faier v. Ambrose & Cushing, P.C.* (1993), 154 Ill. 2d 384, 387.

Although the two theories are nearly identical, they are not synonymous. The ultimate participant in strict liability actions is the manufacturer, whereas the ultimate participant in implied warranty of merchantability actions is a merchant. The court did not err in ruling that section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—621) did not apply to actions premised on breach of implied warranty of merchantability.

## III

■ Edgewater contends that the "Refusal To Permit Blood Transfusion" signed by Mrs. Garcia and the "Special Consent And Release" signed by Mr. and Mrs. Garcia barred plaintiff's claim as a matter of law against Edgewater. We agree.

At oral argument, plaintiff for the first time argued that the "Jehovah Witness Special Consent And Release" which was executed by both Mr. and Mrs. Garcia did not bar plaintiff's claim because it did not contain express reference to the language under the Uniform Commercial Code (UCC) to disclaim the implied warranties of merchantability and fitness for a particular purpose. (Ill. Rev. Stat. 1983,

ch. 26, par. 2—316(2).) Defendant Edgewater contends that because plaintiff did not raise this issue below or in his appellate brief, it is waived. We agree. 134 Ill. 2d R. 341(e)(7); *Robles v. Chicago Transit Authority* (1992), 235 Ill. App. 3d 121, 131, 601 N.E.2d 869 (argument raised for first time in oral argument waived pursuant to Rule 341(e)(7)); *Consentino v. Price* (1985), 136 Ill. App. 3d 490, 494, 483 N.E.2d 297, 300 (theory upon which a case is tried cannot be changed on review, issue not presented to or considered by the trial court cannot be raised for the first time on appeal); *Klubeck v. Division Medical X-Ray, Inc.* (1982), 108 Ill. App. 3d 630, 635-36, 439 N.E.2d 506 (theory advanced below cannot be changed on review).

Moreover, appellate courts should not consider different theories or new questions if proof might have been offered to refute them had they been presented at trial. *Klubeck*, 108 Ill. App. 3d at 636.

We also consider that the *purpose* of section 2—316(2) of the Uniform Commercial Code is *to protect* the *buyer from unbargained language of disclaimer* by denying effect to such language *when inconsistent with contract language of express warranty*, and it permits the exclusion of implied warranties by conspicuous language in the contract. *First National Bank v. Husted* (1965), 57 Ill. App. 2d 227, 235, 205 N.E.2d 780.

In the case at bar, the "Refusal To Permit Blood Transfusion" provided:

> "I request that no blood or blood derivatives be administered to myself Victoria Garcia during this hospitalization, notwithstanding that such treatment may be deemed necessary in the opinion of the attending physician or his assistants to preserve life or promote recovery. I release the attending physician, his assistants, the hospital and its personnel from any responsibility whatever for any untoward results due to my refusal to permit the use of blood or its derivatives."

The "Special Consent And Release" stated:

> "I hereby authorize Dr. J. Shah-Mirany and/or such assistants as may be selected by him to treat my heart condition by the performance of the following surgery: open heart surgery, mitral valve replacement and possible IAB cardiac arrest.
>
> The procedures necessary to treat my condition have been explained to me by Dr. J. Shah-Mirany, and I understand the nature of the procedures to be opening the chest, removing the diseased valve and replacement and any other procedure necessary[.]

It has been explained to me that during the course of the operation, unforeseen conditions may be revealed that would medically necessitate a transfusion of human blood or blood derivatives. I do not authorize the above-named surgeon, his assistants, or his designees to perform such transfusion. I fully recognize that failure to transfuse blood may result in my death.

*In the event of my death as a result of not administering blood, we hereby absolve Dr. J. Shah-Mirany, his assistants, his designees, and Edgewater Hospital of Chicago and its agents from liability.*" (Emphasis added.)

While we are mindful that exculpatory contracts are not favored and must be construed against the benefitting and drafting party, they will be enforced unless it would be against public policy, or there is something in the social relationship of the parties militating against upholding the agreement. *Harris v. Walker* (1988), 119 Ill. 2d 542, 548, 519 N.E.2d 917.

We are also mindful that releases which spell out the intention of the parties with great particularity generally will not be construed to defeat a claim which is not explicitly covered by the terms of the release. *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 395, 493 N.E.2d 1022.

Here, in construing the releases against the hospital and in reviewing the record for violation of public policy, there are no policy reasons which would indicate that the releases should not be upheld.

The releases explicitly delineated the desires and intentions of both parties. Mrs. Garcia did not want a blood transfusion under any circumstances and the hospital would not be responsible whatever untoward result occurred from her refusal to permit such transfusion.

Also, the Illinois Supreme Court has held that a Jehovah's Witness' first amendment rights preclude them from being forced to accept blood transfusions. *In re Estate of Brooks* (1965), 32 Ill. 2d 361, 372, 205 N.E.2d 435.

We note that plaintiff cites *Corlett v. Caserta* (1990), 204 Ill. App. 3d 403, 407, 562 N.E. 2d 257, for the proposition that the releases which were executed by Mrs. Garcia did not relieve Edgewater from being obligated to furnish her with a heart valve that was fit for its intended purpose.

However, *Corlett* is distinguishable from the case at bar. In *Corlett*, plaintiff's wrongful death suit was founded upon the defendant doctor's alleged negligent failure to timely diagnose and treat the decedent's gastric bleeding following colon surgery. The suit was not

predicated upon the defendant doctor's respect for the decedent's refusal-to-transfuse-blood release. Consequently, the court found that the release did not relieve the defendant doctor from liability for alleged negligence.

In the case at bar, releases were necessary to protect the hospital from unforeseen developments such as the one which occurred. The releases were straightforward and unambiguous. They expressly addressed the possibility of unforeseen conditions (*i.e.*, the defective Shiley mitral valve) and acknowledged that if unforeseen conditions occurred, Mrs. Garcia's refusal to permit a blood transfusion might result in her death.

As such, we hold that the releases barred plaintiff's claim against Edgewater. Although we must reverse because of this holding, for completeness, we will address the remaining issue relating to the dismissal of Edgewater's third-party complaint for indemnity against Shiley.

### IV

Edgewater contends that the trial court erred in granting defendant Shiley's motion to dismiss Edgewater's third-party complaint on the ground that Edgewater's third-party complaint for indemnity against Shiley was barred by Shiley's previous settlement with plaintiff pursuant to the Contribution Act. We agree.

### A

■ The right to indemnity and the right of contribution are separate and distinct concepts. Contribution contemplates the distribution of liability for a loss among joint tortfeasors according to each tortfeasor's percentage of relative fault. However, indemnity allows one tortfeasor to shift the entire loss to another tortfeasor. (*Dixon v. Chicago & North Western Transportation Co.* (1992), 151 Ill. 2d 108, 118, 601 N.E.2d 704.) The Illinois Supreme Court has held that the implied warranty in a defective products case remains available only where the party seeking the right was not negligent or otherwise at fault in causing the loss. *Dixon*, 151 Ill. 2d at 120-21.

Generally, indemnity is the obligation resting on one party (the indemnitor) to make good a loss or damage another (the indemnitee) has incurred. The right to be indemnified by another may be express, as in a contractual provision, or it may be implied, which would arise in situations in which a promise to indemnify can be implied from the relationship between the tortfeasors. *Dixon*, 151 Ill. 2d at 118.

Subsequent to the *Dixon* case, the Illinois Supreme Court directly considered whether the Contribution Act abolished common law implied indemnity in quasi-contractual situations. The supreme court has held that acts in relation to contribution among joint tortfeasors do not effectively abolish actions for common law implied indemnity in vicarious liability actions. *American National Bank & Trust Co. v. Columbus Cuneo-Cabrini Medical Center* (1992), 154 Ill. 2d 347 (modified upon denial of rehearing, February 1, 1993).

Also, the circumstances in the case at bar relative to the right to indemnity is also analogous to *Faier* where our supreme court held that a defendant-attorney who settled the entire claim of plaintiff in a legal malpractice action had the right to maintain an action for contribution and implied indemnity against a released, nonsettling attorney. *Faier*, 154 Ill. 2d at 387.

Following the *American National Bank* and *Faier* cases, we now hold that the trial court erred in ruling that Edgewater's third-party complaint for indemnity against Shiley was barred by Shiley's previous settlement with plaintiff.

B

Shiley contends that Edgewater's implied indemnity claim is barred by the UCC four-year statute of limitations contained in section 2—725 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 2—725), which provides that UCC actions must be filed within four years of the contract breach. We disagree.

The Illinois Supreme Court and the Illinois Appellate Court have established that even where the parties have an underlying contractual relationship, an implied indemnity action is still an action sounding in tort and therefore the UCC four-year statute of limitations does not apply. Instead, the applicable limitation statute is the general five-year provision contained in section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—205), which provides that the limitation does not run until judgment is entered against the party seeking indemnity. *Maxfield v. Simmons* (1983), 96 Ill. 2d 81, 86, 449 N.E.2d 110; *Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, 953, 463 N.E.2d 913.

In *Maxfield* and *Anixter Brothers*, the defendant/third-party plaintiff (like Edgewater) was sued on a contractual theory. In *Maxfield*, defendant/third-party plaintiff, Simmons, was sued in contract for installing defective materials in a home. Simmons had purchased the defective materials from the third-party defendants. Thus, Simmons filed a third-party complaint for implied indemnity against the

third-party defendants who claimed that the implied indemnity action was barred by the four-year statute of limitations under the Uniform Commercial Code. Our supreme court rejected the UCC argument and held that although the relationship between the parties was premised on contract, the implied indemnity action itself was still premised on tort principles and thus:

> "A recognition of this implied right of indemnity does not 'eviscerate' the UCC's statute of limitations contained in section 2—725, since it has no application to the indemnity cause of action." *Maxfield*, 96 Ill. 2d at 86.

In *Anixter Brothers*, the plaintiff, Anixter Brothers, brought an action for breach of contract and breach of warranty against Central Steel & Wire Co. (Central) to recover damages for the replacement of defective brass tubing. Central then brought a third-party implied indemnity action against Bridgeport Brass Co., which had sold the allegedly defective brass tubing to Central. Bridgeport moved to dismiss *inter alia* on the grounds that the third-party complaint was barred by the four-year UCC statute of limitations. Following *Maxfield*, the appellate court held that although the relationship between Central and Bridgeport arose as a result of a contract, the implied indemnity action is still a tort recovery and, therefore, the UCC period of limitations for bringing an action under the UCC is inapplicable. *Anixter*, 123 Ill. App. 3d at 953.

For the foregoing reasons, we reverse and remand with directions that the judgment against Edgewater be vacated and that judgment be entered for Edgewater and against plaintiff.

Reversed and remanded with directions.

MURRAY and McNULTY, JJ., concur.