CAROLEE PITLER, Plaintiff-Appellant, *v.* MICHAEL REESE HOSPITAL, Defendant-Appellee.

First District (5th Division)    No. 78-1462

Opinion filed on rehearing December 31, 1980.

Terrence E. Leonard and Andrew A. Ziemba, both of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Williams P. Door and Hugh C. Griffin, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from an order which dismissed counts I, II and IV of her complaint for damages because of personal injury, said counts sounding respectively in breach of warranty, innocent misrepresentation, and strict liability in tort; and which also granted summary judgment to defendant as to count III, predicated on negligence. These four counts were directed against Michael Reese Hospital (hereafter defendant). Count V, against Dr. Julius Hess, is not involved in this appeal and remains pending in the trial court.

In all four counts, plaintiff alleges that she was one year old in 1947 when she was brought by her parents to defendant for "radiation treatment"[1] of an enlarged thymus; that she first learned in April 1975 of this treatment; and that in June of 1976 she underwent surgery for a cancerous thyroid which she alleges was caused by the radiation treatment.

---

[1] The complaint does not otherwise describe the treatment; but, from the briefs filed, it appears to have been X-ray radiation therapy, which is also termed x-radiation.

OPINION

Plaintiff initially contends that counts I, II and IV stated causes of action and were improperly dismissed. We note that the record does not inform us as to the reasoning of the trial court for these dismissals. The briefs of the parties, however, consider them as having been on the basis that radiation treatment was the rendition of professional medical services which was neither the "sale of goods" under the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1977, ch. 26, pars. 1—101 *et seq.*) (count I), the "sale of a chattel" under section 402B of the Restatement (Second) of Torts (1965) (count II), or the "sale of a product" under the strict liability doctrine (count IV).

■■ Defendant's motion to dismiss was brought under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45), and subsection 1 thereof requires that all objections to pleadings must be raised by a motion which "shall point out specifically the defects complained of." The motion, however, specified no particular defects in the complaint, stating only generalities, as follows: "The facts as alleged failed to support a theory of any implied or expressed warranty" (count I); "[t]he facts as alleged failed to support any legal theory upon which the plaintiff can base a cause of action" (count II); and that "[t]he facts as alleged in Count IV fail to state a cause of action upon which a theory of strict liability could be premised." Thus, because defects are not specifically pointed out, in determining the propriety of the dismissals of counts I, II and IV, we are concerned only with questions of law presented by the pleadings. *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.

We will first consider the dismissal of count IV, in which plaintiff maintains that she stated a cause of action under the doctrine of strict liability in tort. This doctrine, as expressed in section 402A of the Restatement (Second) of Torts (1965), was adopted in this State by *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, and pertinent to the issue here, provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property * * *."

■■ The single issue raised by the parties as to count IV is whether the administration of the radiation treatment was the sale of a product under that doctrine. We hold it was not in view of two recent decisions of the Illinois Supreme Court, in both of which, as in the instant case, the plaintiffs were children who had received radiation therapy treatments by defendant which allegedly resulted in cancerous conditions. In *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 291, 415 N.E.2d 390, 395, the court held "that public policy dictates against the imposition of

strict liability in tort for injuries resulting from the administration of X-radiation treatments by a hospital." In *Dubin v. Michael Reese Hospital* (1980), 83 Ill. 2d 277, 281, 415 N.E.2d 350, 352, the court held "that the appellate court erred in finding X-radiation to be a product subject to the doctrine of strict liability in tort." In the light thereof, we conclude that the trial court properly dismissed count IV.

■■ We turn then to the contention of plaintiff that count I stated a cause of action under the warranty provisions of article 2, sections 2—313 to 2—315 of the Code. (Ill. Rev. Stat. 1977, ch. 26, pars. 2—313 to 2—315.) Article 2 of the Code is limited in its application to "transactions in goods" (Ill. Rev. Stat. 1977, ch. 26, par. 2—102), and it is established that a contract which is predominantly for the rendition of services, even though it involves the furnishing of equipment, is not a transaction in goods and therefore is not governed by article 2 (*e.g., Executive Centers of America, Inc. v. Bannon* (1978), 62 Ill. App. 3d 738, 379 N.E.2d 364; *Bonebrake v. Cox* (8th Cir. 1974), 499 F.2d 951; *Field v. Golden Triangle Broadcasting, Inc.* (1973), 451 Pa. 410, 305 A.2d 689, *cert. denied* (1974), 414 U.S. 1158, 39 L. Ed. 2d 110, 94 S. Ct. 916; *DeMatteo v. White* (1975), 233 Pa. Super. 339, 336 A.2d 355; see also J. White & E. Summers, Uniform Commercial Code 51 (2d ed. 1980)).

In this regard, we note that the allegations of count I are directed solely to the conduct of defendant with respect to treatment. Plaintiff asserts only that defendant "represented and warranted" (a) that radiation treatment would eliminate her enlarged thymus without side effects; (b) that the treatment was properly investigated and researched and would cause no side effects; and (c) that the treatment was standard in the medical community at that time. She concludes that her "cancerous condition was caused by the radiation treatment administered by Defendant." She does not, however, mention the Code anywhere in count I or elsewhere in the complaint, and she makes no allegations either that there was a sale of goods or that the stated warranties were breached in any manner.

■■ In *Greenberg v. Michael Reese Hospital*, which involved six children who had been given radiation treatments by defendant in the 1940's, the court had this to say:

> "Here, the plaintiffs' emphasis is not on the X-radiation but rather on the results of treatment. As such, plaintiffs' allegations go not so much to the defective nature of the particular X-radiation treatments in question as to the appropriateness of X-radiation treatment for plaintiffs' complaints. Indeed, plaintiffs do not allege any distinction between the X-radiation they received and all other X-radiation. Accordingly, we must conclude that the plaintiffs are

concerned with the conduct of defendant rather than the nature of a particular product." (83 Ill. 2d 282, 289.)

While we are concerned with "goods" under the Code rather than a "product" under strict liability as was the case in *Greenberg*, we think the above quoted language is appropriate here, also. Thus, we believe that the transaction between plaintiff's parents and defendant was predominately, if not entirely, for the rendition of services by defendant and, in view thereof, we find the Code has no application and that the court properly dismissed count I.

■■ Concerning count II, we see again that defendant did not contest the sufficiency of the complaint in the trial court, and the sole question presented is one of law; namely, whether the administration of the radiation treatment was the sale of a "chattel" as that term is used in the innocent misrepresentation theory of liability set forth in Restatement (Second) of Torts §402B (1965).[2] This section provides:

> "One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
>
> (a) it is not made fraudulently or negligently, and
>
> (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller."

The comments concerning section 402B are of little assistance, as they do not explicitly or implicitly define chattel. (See Restatement (Second) of Torts, Explanatory Notes §402B, comments *a* through *j*, at 358-62 (1965).) Absent any indication of a different intention of the framers, we will presume that the words used have their ordinary and popularly understood meaning. *Cf. Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222; *People ex rel. Condon v. Commonwealth Edison Co.* (1978), 64 Ill. App. 3d 165, 380 N.E.2d 1215.

■■ "Chattel" is defined in Webster's Third New International Dictionary 380 (1971) as "an item of *tangible movable or immovable property* except real estate, freehold, and that movable property which is by its nature considered to be essential to such an estate." (Emphasis added.) Radiation treatment being intangible, we conclude that it is not a chattel under section 402B and, accordingly, we find that the trial court properly dismissed count II as not stating a cause of action.

■■■ Finally, plaintiff contends summary judgment was improperly

---

[2] Illinois recognized this theory of liability in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.

granted as to count III, which sounded in negligence. Where there is no genuine issue as to any material fact, as demonstrated by the pleadings, depositions, admissions, exhibits, and affidavits on file, a motion for summary judgment should be granted. (Ill. Rev. Stat. 1977, ch. 110, par. 57; *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) When an affidavit presented in support of summary judgment is not contradicted by counteraffidavits, it must be taken as true, even though the adverse party's pleadings allege contrary facts. (*Manuel v. McKissack* (1978), 60 Ill. App. 3d 654, 377 N.E.2d 219.) However, such affidavits are to be strictly construed against the movant (*Washington v. Draper & Kramer, Inc.* (1973), 11 Ill. App. 3d 952, 298 N.E.2d 270), and summary judgment should be granted only when the right to it is clear and free from doubt (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679).

Here, defendant's motion for a summary judgment is supported only by the affidavit of Dr. Cohen, a specialist in therapeutic radiology, in which he states that "the administration of X-ray therapy * * * was standard and customary and ordinarily used by hospitals and physicians from 1940 to and including 1949" and that "the state of medical knowledge from 1940 through 1949 * * * did not include the hazards of alleged resulting tumor developments of the thyroid gland." Plaintiff filed no counteraffidavits, and it is the position of defendant that Dr. Cohen's affidavit established the standard of care required by defendant at the time of the radiation treatments. Pointing out that there is nothing in the record to indicate a violation of that standard, defendant argues that the trial court properly dismissed count III.

We note, however, that a similar contention was rejected in *Greenberg v. Michael Reese Hospital,* where the court stated:

"In *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, this court was required to decide what evidence was admissible in determining the standard of care applicable to a hospital. There the defendant argued that the standard of care was determined by the custom of hospitals in the community. The court rejected custom as the sole determinant of the standard of care, saying:

'In the present case the regulations, standards, and by laws [*sic*] which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known.' (33 Ill. 2d 326, 332.) * * *

As *Darling* made clear, a modern hospital such as defendant is an amalgam of many individuals not all of whom are licensed medical practitioners. Moreover, it is clear that at times a hospital functions

far beyond the narrow sphere of medical practice. Accordingly, while various medical judgments are necessarily a daily part of hospital administration, they do not constitute the entirety of a hospital's function, as is the case with single medical practitioners. Thus, we deem it appropriate to the diversity inherent in hospital administration that a broad range of evidence be available to establish the applicable standard of care." 82 Ill. 2d 282, 292-93.

In the light thereof, it is clear that customary practice is not determinative of the standard of care required of hospitals, and we note that in count III plaintiff alleged that defendant was negligent in failing to properly research and investigate the effects of radiation treatment and in failing to warn of possible side effects from its use. There is duty in negligence law to warn of the existence of a dangerous condition which is known or could have been known and which is not apparent to the other party. (*Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423; *Green v. Welts* (1970), 130 Ill. App. 2d 600, 265 N.E.2d 188.) As stated in *Kirby v. General Paving Co.* (1967), 86 Ill. App. 2d 453, 457, 229 N.E.2d 777, 779:

"A duty to warn exists where there is unequal knowledge, actual or constructive [of a dangerous condition], and the defendant possessed of such knowledge, knows or should know that harm might or could occur if no warning is given. [Citations.]"

In this regard, Dr. Cohen in his affidavit states only that "the state of medical knowledge from 1940 through 1949 did not include the hazards of tumor developments of the thyroid gland." He does not state, however, that defendant had no actual or constructive knowledge of possible side effects at the time of the treatment in 1947; nor could such an inference be drawn, as Dr. Cohen gives no suggestion that he was an agent, officer, or even a member of the medical staff of defendant at that time. In fact, there is no indication in the affidavit as to whether Dr. Cohen's knowledge of the art in the 1940's was from personal experience, hearsay, or medical writings. Construing this affidavit of Dr. Cohen strictly, as we must, it cannot be said that it negates actual or constructive knowledge by defendant of possible harmful side effects. Accordingly, we find that a question of fact exists in that respect and that summary judgment was improperly granted as to count III.

For the reasons stated, we affirm the dismissal of counts I, II and IV, but we reverse the grant of summary judgment to defendant as to count III and this matter is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; remanded for further proceedings.

MEJDA and WILSON, JJ., concur.