AYYASH v HENRY FORD HEALTH SYSTEMS

Docket No. 165101. Submitted January 10, 1995, at Detroit. Decided
April 21, 1995, at 10:35 A.M. Leave to appeal sought.

Samira, Charles, and Ronald Ayyash brought an action in the
Wayne Circuit Court against Henry Ford Health Systems,
doing business as Henry Ford Hospital, and D. Gary Wolford,
D.D.S., seeking damages resulting from the surgical implanta-
tion into the temporomandibular joint of Samira's jaw a medi-
cal device known as a Vitek Proplast Silastic. The plaintiffs
alleged various products liability theories against the defen-
dants. The court, John R. Kirwan, J., granted summary disposi-
tion for the defendants on the basis that the surgical implanta-
tion of the medical device was not a sale of the device, but
rather was the rendering of a medical service, for which
products liability theories are not applicable. The plaintiffs
appealed.

The Court of Appeals held:

The implantation of a medical device into a patient is the
providing of a medical service rather than a sale of the medical
device. Imposing on doctors and hospitals strict liability for the
safety and utility of medical devices that are implanted during
surgical procedures would place on these suppliers of medical
services an unrealistic burden of being the testers and guaran-
tors of the tens of thousands of products used by doctors and
hospitals. The trial court properly granted summary disposition
for the defendants.

Affirmed.

PRODUCTS LIABILITY — MEDICAL DEVICES — SURGEONS — HOSPITALS —
MEDICAL SERVICES.

The implantation of a medical device into a patient is the
providing of a medical service rather than a sale of the medical
device; imposing on doctors and hospitals strict liability for the
safety and utility of medical devices that are implanted during
surgical procedures would place an unrealistic burden on them.

REFERENCES
Am Jur 2d, Products Liability § 730.
See ALR Index under Products Liability.

*Hemming, Polaczyk & Crown, P.C.* (by *C. Gerald Hemming* and *Linda A. Phillips*), for the plaintiffs.

*Kallas & Henk, P.C.* (by *Leonard A. Henk*), for the defendants.

Before: CONNOR, P.J., and WAHLS and SAAD, JJ.

SAAD, J. The trial court granted summary disposition to defendants—a doctor and a hospital—because it held that, absent negligence, these health care providers should not be legally responsible, on strict liability theories, for an admittedly defective implant placed in Samira Ayyash (hereinafter plaintiff) by defendant physician at defendant hospital. For reasons articulated below, we agree with and affirm the trial court's ruling.

### I. FACTS

Plaintiff fell down a flight of stairs at her home and broke her lower jaw, which was repaired surgically at Henry Ford Hospital. Thereafter, Dr. Wolford, who was at the time head of oral surgery at defendant hospital, treated plaintiff.

After the initial surgery, plaintiff continued to complain of pain and discomfort in her jaw, and Dr. Wolford treated plaintiff for approximately one year. In November 1983, Dr. Wolford surgically implanted into plaintiff's temporomandibular joint a medical device known as a Vitek Proplast Silastic. It is this surgery that gave rise to this suit. After the implant surgery, plaintiff continued treating with Dr. Wolford until April 1986.

The Vitek implants were approved by the Food and Drug Administration in 1983. In June 1990, Vitek, Inc., filed for Chapter 7 bankruptcy, and, in September 1991, plaintiff received a letter from a bankruptcy court in Texas that said that Vitek

had gone into bankruptcy and that she was entitled to make a claim against the bankruptcy estate. The implants were recalled in 1992 because many patients were experiencing a breakdown in the implants. In May 1993, plaintiff's implant was removed surgically.

Plaintiffs' suit raises various products liability theories against defendants, including breach of express warranty, breach of implied warranty, and negligence.[1] In their motion for summary disposition, defendants argued that plaintiffs' products liability claims must fail because the implantation of the medical device during surgery was not the sale of a product, but rather the provision of a medical service. The trial court agreed and granted summary disposition, reasoning that "the essence of the relationship" between the hospital and the patient and the physician and the patient is the provision of a service, not the sale of a product, and, therefore, products liability theories were inapplicable. The trial court accordingly entered its order that dismissed plaintiffs' cause of action on May 3, 1993.

## II. STRICT LIABILITY OR NEGLIGENCE

During this century, scholars advocated and many courts adopted tort theories of products or strict liability (liability without fault) to hold makers and sellers of products liable for injuries to consumers caused by defective products. Using various rationales, which include spreading of the risk, redistribution of wealth, and problems of proof and deterrence, courts developed several theories to impose liability without fault. These include strict liability in warranty and tort. With-

---

[1] A count in the amended complaint for medical malpractice was dismissed by stipulation of the parties.

out commenting on the wisdom of imposing liability without fault on those who make or sell products, this Court must now decide whether to extend these theories of products or strict liability to doctors and hospitals, whose primary function is to render service, not to sell products. Therefore, the legal issue, of first impression, before this Court is whether a plaintiff, injured by an admittedly defective medical implant placed in her body during surgery by her physician (at a hospital) may maintain a strict liability claim against her doctor and the hospital for the injuries caused by the defective implant.

Inasmuch as our appellate courts have not ruled with respect to this significant question of law, we look to other states for guidance. Faced with this precise issue, other jurisdictions have used the "essence of the transaction" test to determine whether the appropriate theory of recovery is strict liability or negligence. *Hector v Cedars-Sinai Medical Center,* 180 Cal App 3d 493, 505; 225 Cal Rptr 595 (1986); *Silverhart v Mount Zion Hosp,* 20 Cal App 3d 1022, 1027; 98 Cal Rptr 187 (1971); *Hoff v Zimmer, Inc,* 746 F Supp 872, 875 (WD Wis, 1990). In other words, appellate courts have imposed strict liability upon sellers of defective products, but not upon providers of services.[2] *Hector, supra* at 505; *Goldfarb v Teitelbaum,* 149 AD2d 566; 540 NYS2d 263 (1989). Where, as here, the putative defendant uses a defective product in the course of providing a service, the courts must decide whether the "transaction" is primarily a sale or a service. If the relationship of defendant to plaintiff is seller to buyer, then products liabil-

[2] In a similar manner, our Supreme Court in *Neibarger v Universal Cooperatives, Inc,* 439 Mich 512, 533-537; 486 NW2d 612 (1992), drew a distinction between sales of products and the provision of services when discussing the applicability of the Uniform Commercial Code, MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*

ity theories will apply. On the other hand, if the relationship of defendant to plaintiff is service provider to one served, then negligence theories will apply.

In the case of a physician or hospital rendering medical care, as here, courts typically have characterized the "transaction" as a service and, accordingly, used negligence rather than strict liability theories of recovery.[3] *Hector, supra* at 505; *Goldfarb, supra* at 566; *Hoff, supra* at 875. We agree with this approach and adopt it here, because there are good reasons to do so.

Because the primary function of physicians and hospitals is to provide care, not to manufacture or distribute products, those economic theories that underlie the imposition of strict liability upon makers and sellers of products do not justify the extension of strict liability to those who provide medical services. It is reasonable to conclude that the vast majority of patients would bear the increased costs associated with such an impractical imposition of liability upon the medical profession for the benefit of a few who for some reason (here bankruptcy) may not be able to obtain recovery from the manufacturer of the defective product. This Court would be remiss if it failed to express its compassion for plaintiff, and others like her, who may be left without a remedy for injuries caused by a defective medical implant. However, this Court should not and will not let its compassion in this case persuade it to adopt a rule of law that would likely cause greater long-term harm to more patients and the medical profession by an ill-advised adoption of strict liability against health care providers.

---

[3] Where a doctor provides a service, a medical malpractice theory may apply. See MCL 600.2912a; MSA 27A.2912(1). However, in this case, the parties stipulated the dismissal of plaintiffs' medical malpractice claim.

Further, whereas imposing strict liability on manufacturers arguably may promote greater care in manufacturing safer products, imposing strict liability on hospitals and physicians would not. Rather, to do so would place an unrealistic burden on the physicians and hospitals of this state to test or guarantee the tens of thousands of products used in hospitals by doctors.

Because imposing liability without fault in such cases would ultimately hurt rather than help patients and their doctors, we affirm the lower court's grant of summary disposition.