NO. 4-01-0641

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BRENDA BRANDT, ) Appeal from

     Plaintiff-Appellant, ) Circuit Court of

v. ) Coles County­

SARAH BUSH LINCOLN HEALTH CENTER, ) No. 00L60

Defendant-Appellee, ) 

     and )

BOSTON SCIENTIFIC CORPORATION, a ) Honorable

Delaware Corporation, ) Ashton C. Waller,

Defendant. ) Judge Presid­ing.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Brenda Brandt, appeals the June 21, 2001, order of the Coles County circuit court granting defendant Sarah Bush Lincoln Health Center's motion pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure to dismiss plaintiff's amended complaint. 735 ILCS 5/2-615, 2-619 (West 2000).  We affirm.

I. BACKGROUND

In December 1998, plaintiff purchased a ProteGen Sling (sling) from defendant to treat her incontinence.  The sling was surgically implanted in plaintiff at defendant’s health center.  In January 1999, the company that manufactured the sling, defendant Boston Scientific Corporation (Boston Scientific), issued a voluntary recall of the sling.  (Boston Scientific is not party to this appeal.)  The recall stated that "upon review of medical literature and clinical experience with synthetic slings *** [Boston Scientific] ha[s] determined that the use of ProteGen in the treatment of female incontinence does not produce outcomes that are consistent with [Boston Scientific’s] standard of performance for [its] products or customer expectations."  The recall further stated that during follow-up and care of existing ProteGen patients, particular care should be given to the detection and treatment of vaginal erosion and dehiscence.  (Dehiscence is the tearing apart or reopening of the surgical wound from the implant, which could result in the dislocation of the sling.)  Following implantation of the sling, plaintiff alleges she experienced serious medical complications, including inflammation, pain, bleeding, infection, and erosion of the tissue of her vaginal wall.  As a result of these complications, the sling was surgically removed in November 1999.

In July 2000, plaintiff filed a six-count complaint against defendants Sarah Bush Lincoln Health Center and Boston Scientific, alleging the torts of negligence and strict liability, and alleging breach of implied warranty of merchantability under the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 
et seq.
 (West 1998)).  Defendant Sarah Bush Lincoln Health Center filed a motion to dismiss the three counts against it arguing, in part, that the complaint was defective due to plaintiff’s failure to attach a section 2-622 physician’s affidavit to the complaint.  735 ILCS 5/2-622 (West 2000).  In January 2001, the trial court granted defendant’s motion to dismiss, finding that the alleged actions of defendant were related to plaintiff’s medical condition and treatment, and therefore, a physician’s affidavit was required.  Plaintiff was given leave to file an amended complaint to include a section 2-622 physician's affidavit.

In May 2001, plaintiff filed her amended complaint alleging the same three counts as the original complaint of negligence, strict liability, and breach of implied warranty of merchantability against Boston Scientific, and one count of breach of implied warranty of merchantability against defendant.  Plaintiff did not attach a section 2-622 physician’s affidavit to the amended complaint.  Defendant filed a motion to dismiss count IV of the amended complaint.  Defendant argued that plaintiff had failed to correct the deficiencies in accordance with the trial court’s order in that count IV was a variation of healing art malpractice and therefore required a section 2-622 affidavit.  Defendant further argued that it was not a "merchant" with respect to the sale of the medical sling as required for liability under the UCC, and that the interaction between the plaintiff and defendant was predominantly to obtain services while liability under the UCC only applies to the sale of goods.  The trial court granted defendant’s motion to dismiss count IV of the amended complaint for failure to meet the pleading requirements of section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 1998)) with prejudice.  This appeal followed.

II. ANALYSIS

The issues in this appeal are whether the sale of the pubovaginal sling sold by defendant to plaintiff was a sale of goods under article 2 of the UCC (810 ILCS 5/2-101 through 2-725 (West 1998)), and whether the allegation of breach of implied warranty of merchantability based upon defendant's sale and distribution of the sling involved "healing art malpractice," thereby requiring the attachment of a section 2-622 physician’s affidavit to the amended complaint.

A. Standard of Review

Our review of the trial court's order granting defendant's motion to dismiss is 
de
 
novo
.  
Neppl v. Murphy
, 316 Ill. App. 3d 581, 583-84, 736 N.E.2d 1174, 1178 (2000).  We may affirm the trial court's ruling on any basis supported by the record.  
Messenger v. Edgar
, 157 Ill. 2d 162, 177, 623 N.E.2d 310, 317 (1993).

B.  Claim for Breach of Implied Warranty of

Merchantability Under the UCC

Plaintiff's amended complaint alleged one count of breach of implied warranty of merchantability under section 2-314 of the UCC against the defendant based upon its sale and distribution of the sling.  810 ILCS 5/2-314 (West 1998).  Section 2-314 of the UCC states:

"(1) Unless excluded or modified ***, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  ***

(2) Goods to be merchantable must be at 

least such as 

(a)  pass without objection in the 

trade under the contract description; and 

***

(c) are fit for the ordinary purposes for which such goods are used[.]"  810 ILCS 5/2-314(1), (2)(a), (2)(c) (West 1998).

Section 2-104 defines "merchant" to mean:  

"[A] person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."  810 ILCS 5/2-104 (West  1998).

Section 2-102 further provides that the UCC "applies to transactions in goods."  810 ILCS 5/2-102 (West 1998)  Finally, case law establishes that the warranty provisions of the UCC do not apply to the rendition of services.  
Pitler v. Michael Reese Hospital
, 92 Ill. App. 3d 739, 742, 415 N.E.2d 1255, 1257 (1980). 

The test for applicability of the UCC in Illinois is whether the transaction at issue is predominantly one for the sale of goods with services incidentally involved, or one for the rendition of services with the sale of goods incidentally involved.  
Boddie v. Litton Unit Handling Systems
, 118 Ill. App. 3d 520, 531, 455 N.E.2d 142, 150 (1983).  If the transaction was primarily for services, then the UCC does not apply even if the sale of goods was part of the transaction.  
Pitler
, 92 Ill. App. 3d at 742, 415 N.E.2d at 1257.  Defendant contends that in the instant case, the sale of the sling was a necessary adjunct to the primary function of providing medical services, and therefore the UCC does not apply.  We agree.

In general, when a person seeks medical care from a hospital, the primary purpose of the transaction is to obtain the hospital's services, not to buy medical supplies or devices.  Many courts have declined to allow products liability claims against hospitals based upon the sale of defective medical equipment.  See, 
e.g.
, 
Parker v. St. Vincent Hospital
, 122 N.M. 39, 41, 919 P.2d 1104, 1106 (1996), citing 
Hoff v. Zimmer, Inc.
, 746 F. Supp. 872 (W.D. Wis. 1990) (hip prosthesis); 
Hector v. Cedars-Sinai Medical Center
, 180 Cal. App. 3d 493, 225 Cal. Rptr. 595 (1986) (pacemaker); 
Fisher v. Sibley Memorial Hospital
, 403 A.2d 1130 (D.C. 1979) (blood for transfusion);  
Roberts v. Suburban Hospital Ass'n
, 73 Md. App. 1, 532 A.2d 1081 (1987) (same); 
Baptista v. Saint Barnabas Medical Center
, 109 N.J. Super. 217, 262 A.2d 902 (1970) (same), 
aff'd
, 57 N.J. 167, 270 A.2d 409 (1970); 
Goldfarb v. Teitelbaum
, 149 A.D.2d 566, 
540 N.Y.S.2d 263 (1989) (mandibular prosthesis); 
Ayyash v. Henry Ford Health Systems
, 210 Mich. App. 142, 533 N.W.2d 353 (1995) (Vitek implant); 
Cafazzo v. Central Medical Health Services
, 542 Pa. 526, 668 A.2d 521 (1995) (same).

A hospital will often use and sell certain tangible

items as a necessary part of providing service.  However, the thrust of the transaction between patient and hospital is still the provision of services to treat a medical condition.  The incidental sale of the product or device that is necessary to render the medical service does not transform the transaction into one primarily for the sale of goods. 

 In this case, plaintiff sought the hospital's

services for treatment of a medical condition.  The rendition of services was the primary purpose of the transaction.  The sale of the sling, though an important part of the services, was incidental to those services.  The UCC does not apply. 

Plaintiff cites 
Garcia v. Edgewater Hospital
, 244

Ill. App. 3d 894, 613 N.E.2d 1243 (1993), for support of her position that the sale of the sling was a sale of goods under the UCC.  
Garcia
 involved a claim of breach of implied warranty of merchantability regarding a defective heart valve sold to a patient by the defendant hospital and used in a heart surgery.  The First District found that the supplying of mitral valves constituted a sale, and therefore, it was not error to base the defendant’s liability on breach of implied warranty of merchantability under section 2-314 of the UCC.  
Garcia
, 244 Ill. App. 3d at 901, 613 N.E.2d at 1249.  The First District based its decision on the Illinois Supreme Court's decision in 
Cunningham v. MacNeal Memorial Hospital
, 47 Ill. 2d 443, 451, 266 N.E.2d 897, 901 (1970), which held that supplying blood for purposes of transfusion was a sale.  The legislature responded to 
Cunningham
 by passing legislation to overrule that decision.  See Pub. Act 77-184, eff. July 2, 1971 (adding Ill. Rev. Stat. 1971, ch. 91, par. 182 (now 745 ILCS 40/2 (West 1998))).

While 
Garcia
 does provide support for plaintiff's

argument, it is a First District decision, which we are not compelled to follow.  Nor do we find 
Garcia
 to be persuasive.  
Cunningham
, the case on which 
Garcia
 relied, was not a UCC case, and it is therefore unclear what precedential value 
Cunningham
 has in a case based upon a UCC claim.  It is also telling that the legislature acted to overrule the holding in 
Cunningham
. While 
Cunningham
 does compel this court to recognize that the sale of the sling in this case was in fact a "sale," the existence of a sale in and of itself does not automatically implicate the UCC.  Rather, the sale must be the primary reason behind the transaction for the UCC to apply.  
Pitler
, 92 Ill. App. 3d at 742, 415 N.E.2d at 1257.  
Garcia
 notwithstanding, we find
 that the transaction in this case was primarily for the rendition of services and that the UCC therefore does not apply. 

C.  Requirement of Section 2-622 Affidavit

Although it does not affect our ruling in this case, we note that the trial court erred when it found plaintiff's UCC claim constituted a claim for "healing art malpractice" as defined in section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2000)) and that plaintiff therefore needed to file a section 2-622 affidavit.  The legislature's purpose in passing section 2-622 was to reduce the number of frivolous suits that are filed and to eliminate such actions at an early stage, before the expenses of litigation have mounted.  
DeLuna v. St. Elizabeth’s Hospital
, 147 Ill. 2d 57, 65, 588 N.E.2d 1139, 1142 (1992).  Section 2-622 was part of the medical malpractice reform legislation enacted by the General Assembly in 1985 in response to what was perceived to be a crisis in the area of medical malpractice.  
DeLuna
, 147 Ill. 2d at 65, 588 N.E.2d at 1142.  The 
DeLuna
 decision solely addressed medical malpractice cases and included no language to expand its applicability further.

The one allegation against defendant in this case

concerns the sale of a defective sling, and plaintiff in this case does not allege malpractice or any breach of a standard of care.  Therefore, the complaint sounds in breach of warranty under the UCC, and it is unnecessary for plaintiff to file a section 2-622 affidavit.  

As a final note, we will address defendant's argument that plaintiff must present expert medical testimony to fully recover direct and consequential damages, and therefore, must file a section 2-622 affidavit.  Defendant seems to argue that section 2-622 applies to any case where medical testimony may be required, whether or not malpractice is alleged, to prove medical injury damages.  This is incorrect. 

We have already found that plaintiff's claim does not involve "healing art malpractice," which is the trigger for applicability of section 2-622.  Therefore, any medical testimony that may be presented in this case will not require the filing of a section 2-622 affidavit.  This is true whether the testimony relates to direct or consequential damages, and this is in line with the case law that holds a section 2-622 affidavit is not required to present medical evidence of damages in other non-malpractice actions.  See 
Mooney v. Graham Hospital Ass'n
, 160 Ill. App. 3d 376, 382, 513 N.E.2d 633, 637 (1987); 
Owens v. Manor Health Care Corp.
, 159 Ill. App. 3d 684, 689, 512 N.E.2d 820, 823-24 (1987); 
Gragg v. Calandra
, 297 Ill. App. 3d 639, 645-46, 696 N.E.2d 1282, 1287 (1998).

III. CONCLUSION

We affirm the trial court.

TURNER, J., concurs.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully concur in part and dissent in part.  I concur with the majority that plaintiff's UCC claim did not constitute a claim for "healing art malpractice" as defined in section 2-622 of the Code of Civil Procedure, and, therefore, plaintiff was not required to file a section 2-622 affidavit.  I dissent, however, with the majority finding that hospitals are exempt from liability for the sale of defective products under the UCC.

The majority decision to ignore 
Garcia
, 244 Ill. App. 3d 894, 613 N.E.2d 1243
, a UCC case, due to its reliance on language in 
Cunningham
, 47 Ill. 2d 443, 266 N.E.2d 897, a non-UCC case, is incorrect.  While the Illinois legislature negated 
Cunningham
 by limiting the liability of hospitals for the 
distribution of blood
,
 it did not eliminate 
Cunningham
’s applicability to the sale of other medical products intended for use in the human body, as specifically found by the 
Garcia
 court.  
Garcia
, 244 Ill. App. 3d at 900, 613 N.E.2d at 1248.  

The facts and cause of action in 
Garcia
 mirror those in the instant case.  
Garcia
 involved a claim for breach of implied warranty of merchantability regarding a defective heart valve sold to a patient by the defendant hospital and used in a heart surgery.  There
, the plaintiff brought an action alleging breach of implied warranty of merchantability following the death of his wife.  The plaintiff’s wife, Victoria Garcia, was admitted to the defendant hospital for mitral valve replacement surgery.  The mitral valve connects the heart’s atrial and ventricular chambers and allows blood to flow between the two chambers, thereby providing normal heart function.  
Garcia
, 244 Ill. App. 3d at 896, 613 N.E.2d at 1246.  During the surgery, the diseased mitral valve was removed and replaced with an artificial valve prosthesis.  Following the surgery, Mrs. Garcia's heart was not functioning properly, and upon reopening the heart, the doctor discovered that part of the artificial valve was floating in the heart’s chamber.  The defective valve was removed and replaced with another valve.  The surgery required the plaintiff’s wife to be on a cardiopulmonary bypass machine for an extended time, which resulted in her developing a disorder that prevented the blood from clotting.  The plaintiff’s wife lost all of her blood and died.  
Garcia
, 244 Ill. App. 3d at 897, 613 N.E.2d at 1246.

The defendant in 
Garcia
 argued, as did defendant in the instant case, that it should not be liable under section 2-314 of the UCC for breach of implied warranty of merchantability.  The trial court found that the hospital could be liable, and in upholding the trial court’s ruling, the appellate court stated that 
Cunningham
 makes it clear that the supplying of mitral valves constituted a sale, and therefore, it was not error to base the defendant’s liability on breach of implied warranty of merchantability.  While the appellate court acknowledged the statutory change following the 
Cunningham
 decision that limited liability of hospitals for the distribution of blood, the appellate court, citing 
Hill v. Jackson Park Hospital
, 39 Ill. App. 3d 223, 226, 349 N.E.2d 541, 544 (1976), stated that the 
Cunningham
 decision was controlling with respect to surgical implements, drugs, food, and other articles intended for use in the human body.  
Garcia
, 244 Ill. App. 3d at 900, 613 N.E.2d at 1248.  Therefore, 
Garcia
 and 
Cunningham
 are controlling here.

Moreover, 
the cases relied upon by the majority, 
Pitler v. Michael Reese Hospital
, 92 Ill. App. 3d 739, 415 N.E.2d 1255,  and 
Boddie v. Litton Unit Handling Systems
, 118 Ill. App. 3d 520, 455 N.E.2d 142 (1983), are clearly distinguishable from the facts in the instant case.  In 
Pitler
, the court stated that the implied warranty of merchantability under the UCC did not apply in that case because the transaction between the plaintiff’s parents and the defendant hospital was for the rendition of services (radiation treatments).  In so ruling, however, the court noted that "[the 
plaintiff] does not *** mention the [UCC] anywhere in count I or elsewhere in the complaint, and [plaintiff] makes no allegations either that there was a sale of goods or that the stated warranties were breached in any manner
."  (Emphasis added.)  
Pitler
, 92 Ill. App. 3d at 742, 415 N.E.2d at 1257-58. 

Similarly, in 
Boddie
, the appellate court found that the provision of construction services was not a sale of goods under the UCC.  
Boddie
, 118 Ill. App. 3d at 531, 455 N.E.2d at 150.  In 
Boddie
, the plaintiff filed a claim for negligence, strict liability, willful and wanton conduct, and breach of warranty against the defendant, who was the general contractor for the construction of the postal facility.  
Boddie
, 118 Ill. App. 3d at 522, 455 N.E.2d at 144.  The court found the transaction between the defendant and plaintiff’s employee, the United States Post Office, did not fall within the ambit of the UCC.  The court based its ruling upon the language of the contract between the defendant and the United States Post Office.  Further, the court noted that general construction contracts encompass the erection of buildings, the installation of utilities and services, with extensive excavation and demolition, and therefore, the construction contract between the defendant and the United States Post Office was clearly not a transaction for the sale of goods.  
Boddie
, 118 Ill. App. 3d at 531, 455 N.E.2d at 150.  Thus, the facts of 
Pitler
 (which does not allege UCC violations or the sale of goods) and 
Boddie
 (a contract for construction services) make these decisions distinguishable from the instant case.

The majority opinion erroneously dismisses the applicable Illinois case law, relying instead on 
Pitler
, 
Boddie
, and other states' case law.  The majority cites nine cases, all from other jurisdictions, where courts dismissed products liability claims against hospitals based upon the sale of defective medical equipment.  While there may be good policy reasons for creating a bright-line rule that hospitals are not liable for the sale of defective medical products under the UCC, the legislature has not done so--even though it could have done so when it made statutory changes following 
Cunningham
.  As such, 
Cunningham
 and 
Garcia
 should be followed.  There is no authority for exempting hospitals for the sale of defective medical products.

For these reasons, I would reverse the trial court.