Docket No. 93982–Agenda 11–March 2003.

BRENDA BRANDT, Appellant, v. BOSTON SCIENTIFIC CORPORATION (Sarah Bush Lincoln Health Center,

 Appellee).

Filed June 5, 2003

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff, Brenda Brandt, suffered severe complications following the surgical implantation of a medical device that was later recalled by the manufacturer for being substandard. Brandt filed an amended complaint that included a breach of implied warranty of merchantability claim (810 ILCS 5/2–314 (West 1998)) under the Uniform Commercial Code (UCC) (810 ILCS 5/1–101 
et seq.
 (West 2000)) against her treating hospital, defendant Sarah Bush Lincoln Health Center (Health Center). The circuit court of Coles County dismissed the claim, and the appellate court affirmed (329 Ill. App. 3d 348). We granted Brandt’s petition for leave to appeal (177 Ill. 2d R. 315) to resolve the question whether Brandt can bring a viable cause of action for breach of the UCC implied warranty of merchantability against the Health Center after a defective medical device was surgically implanted during her medical treatment in that hospital.

BACKGROUND

Brandt was admitted to the Health Center to receive treatment for urinary incontinence. While there, a ProteGen Sling (sling) was surgically implanted on December 23, 1998. A charge for the sling was included in her bill from the Health Center. In January 1999, the manufacturer of the sling, Boston Scientific Corporation, issued a voluntary recall of the product because the product was causing medical complications in 7% of patients. Brandt suffered serious complications, including pain, infection, bleeding, and erosion of vaginal tissue. In response to these complications, the sling was surgically removed in November 1999.

Brandt filed a six-count complaint in July 2000, alleging negligence, strict liability, and breach of warranty against defendants Boston Scientific Corporation and Sarah Bush Lincoln Health Center. The Health Center filed a motion to dismiss counts IV through VI under section 2–615 of the Code of Civil Procedure (Code) (735 ILCS 5/2–615 (West 1998)) because the Health Center was not a merchant of medical devices and because the transaction between Brandt and the Health Center was predominantly for services instead of goods. Pursuant to section 2–619 of the Code (735 ILCS 5/2–619 (West 1998)), the motion alleged Brandt failed to comply with the pleading requirements of section 2–622 of the Code (735 ILCS 5/2–622 (West 1998)). Section 2–622 requires a plaintiff to attach an affidavit “[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice.” 735 ILCS 5/2–622(a) (West 1998). The trial court granted the motion to dismiss without prejudice for failure to comply with section 2–622.

Brandt filed a four-count amended complaint in May 2001. The first three counts again were against Boston Scientific Corporation and are not part of this appeal. Count IV alleged a breach of warranty claim against the Health Center; no section 2–622 affidavit was attached. Count IV specifically stated that the Health Center “was engaged in the sale and distribution of medical products, including [the] pubovaginal sling.” As for the nature of the transaction, Brandt alleged:

“Plaintiff, BRENDA BRANDT, purchased a ProteGen Sling catalog no. 820-121, lot. No. 027101, sold and distributed by Defendant, SARAH BUSH LINCOLN HEALTH CENTER, and was implanted with the said product on or about December 23, 1998, at the SARAH BUSH LINCOLN HEALTH CENTER in Mattoon, Illinois.”

The Health Center again filed a motion to dismiss under sections 2–615 and 2–619 of the Code, citing the same three arguments it had raised about the original complaint. The trial court dismissed count IV with prejudice for failure to comply with the pleading requirements of section 2–622; the court expressed no opinion regarding the other arguments asserted in the Health Center’s motion.

The appellate court found that the trial court erred in holding that count IV alleged a healing art malpractice claim. Thus, section 2–622 did not apply. 329 Ill. App. 3d at 353-54. The appellate court affirmed the dismissal of count IV, however, because it found that the transaction between Brandt and the Health Center was primarily for services rather than goods so that the UCC did not apply. 329 Ill. App. 3d at 353-54. The appellate court acknowledged that 
Garcia v. Edgewater Hospital
, 244 Ill. App. 3d 894 (1993), reached the opposite conclusion but expressly declined to follow 
Garcia
. 329 Ill. App. 3d at 353. The appellate court concluded that 
Garcia
 erroneously relied upon this court’s decision in 
Cunningham v. MacNeal Memorial Hospital
, 47 Ill. 2d 443 (1970), because 
Cunningham
 had been entirely overruled by subsequent legislation and, further, because 
Cunningham
 involved a strict liability claim rather than a UCC claim. 329 Ill. App. 3d at 353.

Because Brandt prevailed on the section 2–622 issue before the appellate court, she only raises the arguments from the section 2–615 motion to dismiss before this court. She submits that the appellate court erred in finding that her transaction with the Health Center was primarily for services and in asserting that 
Cunningham
 was no longer good law. We now consider the propriety of the dismissal of the breach of warranty claim against the Health Center.

ANALYSIS

A section 2–615 motion to dismiss presents a question of law, which is reviewed 
de novo
. 
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 147-48 (2002). In reviewing a motion to dismiss under section 2–615, we accept as true all well-pleaded facts and reasonable inferences therefrom. 
Jackson v. South Holland Dodge, Inc.
, 197 Ill. 2d 39, 44 (2001). We determine whether plaintiff asserts a cause of action upon which relief may be granted after considering all allegations in a light most favorable to plaintiff. 
Jackson
, 197 Ill. 2d at 45.

Article 2 of the UCC imposes the implied warranty of merchantability. 810 ILCS 5/2–314 (West 2000). To succeed on a claim of breach of implied warranty of merchantability, a plaintiff must allege and prove: (1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality. 810 ILCS 5/2–314(1) (West 2000); see 
Garcia
, 244 Ill. App. 3d at 902; 
Malawy v. Richards Manufacturing Co.
, 150 Ill. App. 3d 549, 558 (1986). Unless excluded or modified, this warranty is implied in every sale under these conditions. 810 ILCS 5/2–314(1) (West 2000).

Article 2 applies to “transactions in goods.” 810 ILCS 5/2–102 (West 2000). The UCC defines goods as “all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale.” 810 ILCS 5/2–105(1) (West 2000). Where there is a mixed contract for goods and services, there is a “transaction in goods” only if the contract is predominantly for goods and incidentally for services. 
Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.
, 199 Ill. 2d 325, 352-53 (2002). This analysis is known as the “predominant purpose” test.

The parties here do not dispute that the sling implanted in Brandt satisfies the UCC definition of goods. The parties do dispute, however, whether the exchange between Brandt and the Health Center constituted a transaction in goods; the Health Center argues that it primarily provided medical services rather than goods to Brandt.

In addition, an implied warranty of merchantability applies only to a merchant of goods of the kind involved in the contract. “Merchant” is defined in the UCC as:

“a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.” 810 ILCS 5/2–104(1) (West 2000).

Section 2–314 provides, “a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is 
a merchant with respect to goods of that kind
.” (Emphasis added.) 810 ILCS 5/2–314(1) (West 2000). UCC comments explain that this language in section 2–314 requires a merchant to have professional status as to a particular kind of goods, which is narrower than the general definition of merchant found in section 2–104. 810 ILCS Ann. 5/2–104, Uniform Commercial Code Comment 2, at 70-71 (Smith-Hurd 1992); 
Siemen v. Alden
, 34 Ill. App. 3d 961, 964 (1975). The Health Center disputes that it is a merchant of medical devices.

Finally, a plaintiff must show that the goods in question were not of merchantable quality. Merchantable means of a quality commensurate with that generally accepted within the trade under the description of the goods in the contract. 810 ILCS Ann. 5/2–314, Uniform Commercial Code Comment 2, at 186 (Smith-Hurd 1992). There is little dispute in this case that the sling was not merchantable. In its notice of voluntary recall of the sling, the manufacturer conceded as much by explaining, “we cannot assure ourselves that the overall experience with ProteGen meets our standards for product performance.”

We must determine whether, accepting the truth of the complaint allegations and reasonable inferences, Brandt has stated a cause of action upon which relief may be granted. 
Jackson
, 197 Ill. 2d at 44-45. The complaint alleged: (1) Brandt purchased the sling from the Health Center; (2) the sling was implanted in her body at the Health Center; and (3) the Health Center was engaged in the sale of medical products, including slings. Thus, we must determine whether these allegations assert that the transaction between Brandt and the Health Center was predominantly for goods, and if so, that the Health Center can be considered a merchant of slings.

As an initial matter, we address Brandt’s contention that such an evaluation is not properly made upon review of a motion to dismiss because we have only the amended complaint and billing statements to consider. Illinois courts on several occasions have evaluated whether a contract involved a transaction in goods or services upon review of dismissal of a UCC claim. 
Pitler v. Michael Reese Hospital
, 92 Ill. App. 3d 739, 742-43 (1980) (hospital delivery of radiation treatment was predominantly for services, so the breach of warranty claim was properly dismissed); see also 
Zielinski v. Miller
, 277 Ill. App. 3d 735, 741 (1995) (masonry subcontract was primarily for services, so dismissal under the UCC statute of limitations was inappropriate); 
Tivoli Enterprises, Inc. v. Brunswick Bowling & Billiards Corp
., 269 Ill. App. 3d 638, 645-47 (1995) (bowling lane construction contract was predominantly for goods, so dismissal under the UCC statute of limitations was proper); 
Bob Neiner Farms, Inc. v. Hendrix
, 141 Ill. App. 3d 499, 501-03 (1986) (building construction contract was primarily for goods, so claim properly was dismissed under UCC statute of limitations); 
Nitrin, Inc. v. Bethlehem Steel Corp
., 35 Ill. App. 3d 577, 594-95 (1976) (breach of implied warranty of merchantability claim properly stricken by trial court because construction contract was predominantly for services). We agree that the predominant purpose test can be applied at this stage of the proceedings.

In addition, even what ordinarily may be a question of fact becomes a question of law if the factual circumstances are undisputed and no reasonable difference of opinion could arise about the inferences that can be made from those facts. See 
Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.
, 114 Ill. 2d 133, 142 (1986); 
Zale Construction Co. v. Hoffman
, 145 Ill. App. 3d 235, 242 (1986). The parties do not dispute that Brandt purchased a sling from the Health Center, which was implanted in her body at the Health Center. It is reasonable to infer that Brandt had a medical condition, which was diagnosed and treated through a surgical procedure at the Health Center. According to the billing statement, the hospital clearly provided medical facilities and treatment necessary to enable the implantation of the sling. The purchase of the sling was not an isolated transaction; it is not reasonable to infer that Brandt simply went to the hospital, bought the sling, and left. There is no reasonable dispute about the facts of this case.

Plaintiff asserts that the amended complaint does not allege that the surgeon acted as an employee or agent of the hospital when performing the implantation surgery and that we should not presume as much. Defendant does not dispute the status of the surgeon. The status of the surgeon is not determinative, and we proceed on the assumption that the surgeon was not in any way affiliated with the Health Center because the pleadings do not address the surgeon’s status.

Thus, we can analyze, as a matter of law, whether the hospital’s sale of the sling and facilitation of its surgical implantation was a transaction in goods under the UCC. There is little Illinois case law evaluating the nature of such a hospital-patient transaction, and other jurisdictions are divided on this issue (1 J. White & R. Summers, Uniform Commercial Code §9–2, at 436 (3d ed. 1988); Annotation, L. Sharp, 
Liability of Hospital or Medical Practitioner Under Doctrine of Strict Liability in Tort, or Breach of Warranty, for Harm Caused by Drug, Medical Instrument, or Similar Device Used in Treating Patient
, 65 A.L.R.5th 357 (1999)).

We evaluated a transaction between a hospital and patient in 
Cunningham
. Both Brandt and the 
Garcia
 court rely heavily on 
Cunningham
 in support of the position that a hospital’s provision of a medical device is a sale of goods to which UCC implied warranties apply. In 
Cunningham
, however, the plaintiff brought a strict liability claim rather than a UCC claim against a hospital after she contracted hepatitis from a contaminated blood transfusion she received there. 
Cunningham
, 47 Ill. 2d at 445. The defendant, relying on 
Perlmutter v. Beth David Hospital
, 308 N.Y. 100, 123 N.E.2d 792 (1954), argued that a blood transfusion is a service rather than a sale of a product so that strict liability could not attach. 
Cunningham
, 47 Ill. 2d at 448-49. In 
Perlmutter
, the Court of Appeals of New York held that the plaintiff could not bring an implied warranty of merchantability claim because a blood transfusion was a service rather than a sale of goods under the New York sales act. 
Perlmutter
, 308 N.Y. at 104, 108, 123 N.E.2d at 796, 800. We rejected the 
Perlmutter 
reasoning. 
Cunningham
, 47 Ill. 2d at 450. We instead found that the blood transfusion transaction was a sale of a product, and the complaint sufficiently alleged a strict liability claim. 
Cunningham
, 47 Ill. 2d at 447, 450, 457.

In response to our holding in 
Cunningham
, the General Assembly enacted the Blood and Organ Transaction Liability Act (Act). See Pub. Act 77–184, eff. July 2, 1971 (adding Ill. Rev. Stat. 1971, ch. 91, pars. 181 through 183, now codified at 745 ILCS 40/1 
et seq
. (West 2000)). Under this statute, no warranty or strict liability claims can be brought regarding the “procuring, furnishing, donating, processing, distributing or using” human blood products or tissue “for the purpose of injecting, transfusing or transplanting” them into the human body. 745 ILCS 40/2 (West 2000). Our appellate court is split in its interpretation of the effect of this legislation. The appellate opinion in this case concluded that the legislature entirely overruled our holding in 
Cunningham
 through the Act (329 Ill. App. 3d at 353), while 
Garcia
 found that the legislature foreclosed claims concerning human blood products and tissue but not claims involving drugs, surgical instruments, and other articles usable in the human body (
Garcia
, 244 Ill. App. 3d at 900, citing 
Hill v. Jackson Park Hospital
, 39 Ill. App. 3d 223, 226 (1976)). We note that we applied the rationale of 
Cunningham
 to the dispensing of birth-control pills subsequently to the enactment of the Act. 
Berry v. G.D. Searle & Co.
, 56 Ill. 2d 548, 554-55 (1974). In addition, the language of the Act very clearly expresses an intent to address only human blood products and tissue. 745 ILCS 40/2 (West 2000). Thus, we find that the Act overruled 
Cunningham
 only as to human blood products and tissue.

Nonetheless, 
Cunningham
, a strict liability case, has limited relevance to the present UCC warranty case. Courts in strict liability cases must find that the defendant sold a product rather than services before imposing liability. Restatement (Second) of Torts §402A, at 347 (1965); 
Dubin v. Michael Reese Hospital & Medical Center
, 83 Ill. 2d 277, 279 (1980). In contrast, under article 2 of the UCC, the transaction between the plaintiff and the defendant must have been 
predominantly
 for goods rather than services. 
Belleville Toyota
, 199 Ill. 2d at 352-53. Thus, in 
Cunningham
, we were undeterred by the fact that the provision of blood was “an 
ancillary
 part of the services rendered to that patient” before holding that the blood was a product sold so that the complaint validly alleged a strict liability claim. (Emphasis added.) 
Cunningham
, 47 Ill. 2d at 447, 449-50, 457. Thus, the appellate court in 
Garcia
 incorrectly concluded that 
Cunningham
 dictated that the predominant purpose test was inapplicable to breach of warranty claims involving transactions between hospitals and patients. 
Garcia
, 244 Ill. App. 3d at 900.

We also note that the 1970 
Cunningham
 case predated application of the predominant purpose test to UCC claims in Illinois. This court did not explicitly endorse application of the predominant purpose test to determine whether there is a transaction in goods under article 2 of the UCC until 2002. 
Belleville Toyota
, 199 Ill. 2d at 352-53. The earliest cases applying the test in the lower Illinois courts began to appear in the mid-1970s. See, 
e.g.
, 
Executive Centers of America, Inc. v. Bannon
, 62 Ill. App. 3d 738, 742 (1978) (contract was predominantly for the employment services of plaintiff golf professional and only incidentally for the purchase of goods, 20 golf carts); 
J&R Electric Division of J.O. Mory Stores, Inc. v. Skoog Construction Co.
, 38 Ill. App. 3d 747, 748, 751 (1976) (subcontract to purchase and install exterior unit electrical switchgear was primarily for services).

We now apply the predominant purpose test to the facts of this case. Plaintiff’s transaction with the Health Center is a mixed contract because the hospital provided both medical services, such as an operating room, and goods, such as the sling, to facilitate treatment of plaintiff’s medical condition. Under the predominant purpose test, article 2, and its implied warranties, applies only if a mixed contract is predominantly for goods and only incidentally for services. 
Belleville Toyota
, 199 Ill. 2d at 352-53. When evaluating the predominant nature of contracts, Illinois courts have considered contract language in addition to assessing the proportion of goods and services in the contract. See, 
e.g.
, 
Tivoli Enterprises
, 269 Ill. App. 3d at 646-47 (construction contract).

In this case, Brandt’s bill from the Health Center reflects that of the $11,174.50 total charge for her surgery, a charge of $1,659.50, or 14.9%, was for the sling and its surgical kit; a charge of $5,428.50, or 48.6%, was for all movable goods, including pharmaceuticals, medical supplies, and sterile supplies. The remainder of the charges were for various services, including the hospital and operating rooms and various kinds of medical testing and treatment. A charge for the implantation of the sling by the surgeon was not included in the bill. A majority of the charges, 51.4%, were for services rather than goods. Only a small fraction of the total charge was for the sling, the goods at issue in this case. In addition, the bill listed itemized charges under the heading “service description.”

There is, however, more to the predominant purpose test than making a simple comparison of money paid for goods and services within a transaction. We must consider the predominate nature of the transaction as a whole. As can be reasonably inferred from the amended complaint, Brandt went to the Health Center for medical treatment for her urinary incontinence, rather than merely to buy a sling as one buys goods from a store. Treatment for her condition involved implantation of the sling. While Brandt clearly purchased these goods from the Health Center, the sling was only potentially useful after its surgical implantation. Even assuming the surgeon was a private physician not affiliated with the Health Center, the Health Center provided services before, during, and after surgery to facilitate implantation of the sling. These services, the medical treatment, were the primary purpose of the transaction between Brandt and the Health Center, and the purchase of sling was incidental to the treatment.

This analysis also has been adopted by the Georgia Court of Appeals when similarly applying a predominant purpose test to determine whether the UCC applies in a breach of warranty claim against a hospital:

“In this case, McCombs did not go to Southern Regional to purchase a cervical plate but to have her spinal problem surgically repaired. Southern Regional furnished its facility for use 
by her surgeon
, and it supplied the requisite underlying support services, including recovery room, laboratory, pharmacy support, and nursing care, to help facilitate the surgery and her recovery from it. 

Thus, the transaction at issue was one involving ‘services and labor with an incidental furnishing of equipment and materials.’ [Citation.]” (Emphasis added.) 
McCombs v. Southern Regional Medical Center, Inc.
, 233 Ga. App. 676, 677, 504 S.E.2d 747, 749 (1998).

In fact, the conclusion that the Health Center predominantly provided services in this case is in accord with the national trend on this issue. A majority of foreign jurisdictions hold that a hospital’s provision of a defective surgical device is primarily a transaction for services rather than goods so that no implied warranty of merchantability claim is available. See 
McCombs
, 233 Ga. App. at 677, 504 S.E.2d at 749; 
In re Breast Implant Product Liability Litigation
, 331 S.C. 540, 553, 503 S.E.2d 445, 452 (1998); 
Easterly v. HSP of Texas, Inc.
, 772 S.W.2d 211, 214 (Tex. Ct. App. 1989); 
Hector v. Cedars-Sinai Medical Center
, 180 Cal. App. 3d 493, 508 n.3, 225 Cal. Rptr. 595, 602 n.3 (1986); 
Redwine v. Baptist General Convention
, 681 P.2d 1121, 1124 (Okla. Ct. App. 1982); 
Cutler v. General Electric Co.
, 4 U.C.C. Rep. Serv. 300 (N.Y. Sup. 1967);
 contra
 
Skelton v. Druid City Hospital Board
, 459 So. 2d 818, 821-23 (Ala. 1984); 
Perfetti v. McGhan Medical
, 99 N.M. 645, 653, 662 P.2d 646, 654 (App. 1983).

Holding hospitals liable for breach of warranty is not the only legal remedy available to Brandt. She can seek recovery from the manufacturer of the sling. See 
Immergluck v. Ridgeview House, Inc.
, 53 Ill. App. 3d 472, 476 (1977). In fact, counts I through III of Brandt’s amended complaint are directed toward the manufacturer. She also could bring a cause of action against the hospital under a negligence theory. 
Cafazzo
, 542 Pa. at 535, 668 A.2d at 525. Foreclosing a breach of warranty claim under these circumstances does not preclude recovery for Brandt.

CONCLUSION

Because we find that the transaction between Brandt and the Health Center was predominantly a transaction for services, article 2 of the UCC does not apply. Given this holding, we need not evaluate whether the Health Center is a merchant of medical devices. Count IV was properly dismissed from Brandt’s amended complaint.

The judgment of the appellate court is affirmed.

Affirmed.